827 F.2d 1281
 56 USLW 2165, 17 Collier Bankr.Cas.2d 622,
16 Bankr.Ct.Dec. 826,
Bankr. L. Rep. P 71,984
 In re SEQUOIA AUTO BROKERS, LTD., INC., Debtor.
Christopher PLASTIRAS, Joseph Lanza, Richard Klein, Freida
Klein, and Judith Fasani, Petitioning Creditors-Appellants,
v.
Ira P. IDELL, Respondents-Appellees.
United States of America, Intervenor.
 No. 85-2352.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 12, 1986.
Decided Sept. 14, 1987.
 
 Lysbeth Goodman, Santa Rosa, Calif., for petitioning creditors-appellants.
 John L. Taylor, Walnut Creek, California, for respondents-appellees.
 Harold J. Krent, Washington, D.C., for intervenor.
 Appeal from the United States District Court for the Northern District of California.
 Before ALARCON and WIGGINS, Circuit Judges, and STEPHENS, Jr.,* District Judge.
 WIGGINS, Circuit Judge:
 
 
 1
 The bankruptcy court found Ira Idell in civil contempt for failing to prepare a statement of affairs and a master-mailing list. The district court reversed and creditors of the debtor corporation, Sequoia Auto Brokers, Ltd., Inc. (Sequoia), appeal. We vacate the district court's order and remand with directions to vacate the bankruptcy court's contempt order for lack of jurisdiction.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 Sequoia was an automobile dealership, and Idell its sole shareholder, officer, director, and manager. In January 1984 Sequoia went out of business. Several persons who had advanced money for cars reported their losses to local authorities, who began investigating alleged fraud by Idell and Sequoia. Idell then filed a voluntary petition for personal bankruptcy, and the creditors filed a Chapter 7 involuntary corporate bankruptcy petition against Sequoia. The bankruptcy court ordered Idell, as the designated responsible individual for Sequoia, to file the corporate statement of affairs, schedules, and master mailing list of creditors as required by 11 U.S.C. Sec. 521. Idell filed the statement of affairs and schedules with the following response to each question: "I hereby exercise my privilege not to respond to this question in accordance with the Fifth and Fourteenth Amendments to the United States Constitution." Idell filed no master mailing list, but at some point apparently turned over all existing books and records of Sequoia to the trustee. The trustee and creditors assert that these records are wholly inadequate for preparation of the required statements.
 
 
 3
 The bankruptcy court ordered Idell to show cause why he should not be held in contempt for failing to file the documents. The court then cited Idell for contempt and referred the matter to the overseeing district court. The district court remanded the matter back to the bankruptcy court to determine whether the bankruptcy court wished to impose criminal or civil contempt sanctions.[1] The district court found that the bankruptcy court had the power to impose civil contempt sanctions itself.
 
 
 4
 The bankruptcy court then found Idell in civil contempt on November 29, 1984. In view of Idell's financial condition, the court concluded that fines would be ineffective and ordered him imprisoned until he complied with its order to complete the documents. On appeal to the district court, a different district court judge found merit in Idell's fifth amendment argument and reversed the contempt order. The creditors timely appeal to this court. The United States intervened to defend the contempt power of the bankruptcy courts.
 
 DISCUSSION
 I. APPEALABILITY OF ORDER
 
 5
 The threshold question is whether this court has jurisdiction over the appeal. The bankruptcy court's contempt order against Idell was final for purposes of appeal to the district court both because Idell is a nonparty, see David v. Hooker, Ltd., 560 F.2d 412, 415 (9th Cir.1977), and because the basis of the contempt citation is Idell's invocation of the fifth amendment, see Maness v. Meyers, 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975) (both cases finding contempt order final for purposes of appeal under 28 U.S.C. Sec. 1291). The district court's reversal of the bankruptcy court's final contempt order is immediately appealable to this court, see Sambo's Restaurants v. Wheeler (In re Sambo's Restaurants), 754 F.2d 811, 814 (9th Cir.1985), unless the intermediate court remands for factual development, see King v. Stanton (In re Stanton), 766 F.2d 1283, 1287-88 (9th Cir.1985); see also Crevier v. Welfare & Pension Fund (In re Crevier), 820 F.2d 1553, 1555 (9th Cir.1987). Since no factual issues are pending, the district court's reversal is final for purposes of appeal to this court pursuant to 28 U.S.C. Sec. 158(d). We therefore have jurisdiction on appeal.
 
 
 6
 II. JURISDICTION OF BANKRUPTCY COURTS TO ISSUE CONTEMPT ORDERS
 
 
 7
 We now turn to the principal question before us: whether a bankruptcy judge has jurisdiction to issue a civil contempt order. The bankruptcy judge here made the actual finding of contempt, issued a civil contempt order, and ordered Idell's incarceration pending his compliance with its order to file the corporate statement of affairs, schedules and master mailing list of creditors pursuant to 11 U.S.C. Sec. 521. Though the parties did not contest jurisdiction in the district court, we raise the issue of jurisdiction of the bankruptcy court on our own motion. See Csibi v. Fustos, 670 F.2d 134, 136 n. 3 (9th Cir.1982) (lack of subject matter jurisdiction in the lower court can be raised by the appellate court on its own motion for the first time on appeal). Our review is de novo. Peter Starr Prod. Co. v. Twin Continental Films, 783 F.2d 1440, 1442 (9th Cir.1986). We consider first whether bankruptcy judges have an inherent authority to exercise the contempt power, and if not, whether bankruptcy judges derive contempt jurisdiction from express or implied statutory authority.
 
 A. Inherent Authority
 
 8
 The contempt power is inherent in article III courts, and not dependent on Congressional authorization. See, e.g., Michaelson v. United States ex rel. Chicago, St. Paul, Minneapolis & Omaha Ry Co., 266 U.S. 42, 65-66, 45 S.Ct. 18, 19-20, 69 L.Ed. 162 (1924) (courts of the United States possess the power of civil contempt once they are invested with jurisdiction over any subject matter); Ex parte Robinson, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873) (power to punish for contempt is inherent in article III courts). The ability to penalize disobedience to judicial orders is "essential in ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other branches." Young v. United States ex rel. Vuitton et Fils S.A., --- U.S. ----, 107 S.Ct. 2124, 2131, 95 L.Ed.2d 740 (1987). Article III is the source of this inherent power to punish contempt. See id. at 2143-45 (Scalia, J., concurring) (reviewing doctrine of inherent contempt power in article III courts). Congress may place restrictions on the exercise of the power, see, e.g., id. at 2133; Ex parte Robinson, 86 U.S. (19 Wall.) at 510-511; Bessette v. W.B. Conkey Co., 194 U.S. 324, 326-27, 24 S.Ct. 665, 666-67, 48 L.Ed. 997 (1904); see also 18 U.S.C. Sec. 401, but the power may "neither be abrogated nor rendered practically inoperative." Michaelson, 266 U.S. at 66, 45 S.Ct. at 20.
 
 
 9
 However, bankruptcy courts do not derive their authority from article III. Bankruptcy judges neither enjoy lifetime tenure nor receive compensation that may not be diminished by Congress. Compare U.S. Const. art. III, Sec. 1 with 28 U.S.C. Secs. 152-153 (bankruptcy judges have fourteen year terms and a salary subject to reduction). Instead, Congress created bankruptcy courts pursuant to its substantive authority over bankruptcies. U.S. Const. art. I, Sec. 8, cl. 4. Unlike an article III court, a bankruptcy court has no necessity to invoke an inherent contempt power to vindicate its authority; article I bankruptcy judges can enforce compliance with their orders by resorting to article III courts. 28 U.S.C. Sec. 157(c)(1); Omega Equip. Corp. v. John C. Louis Co. (In re Omega Equip. Corp.), 51 Bankr. 569, 573 (D.D.C.1985). Congress vests bankruptcy courts with their jurisdiction and their authority has no "inherent" source. See, e.g., American Ins. Co. v. 356 Bales of Cotton (Canter), 26 U.S. (1 Pet.) 511, 545, 7 L.Ed. 242 (1828) (as territorial courts are not article III courts "in which the judicial power conferred by the constitution on the general government" is deposited, their jurisdiction "is conferred by congress, in the execution of those general powers which that body possesses over the territories of the United States"); Palmore v. United States, 411 U.S. 389, 397, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973) (Congress has plenary power to legislate for District of Columbia under Art. I, Sec. 8, cl. 17, including establishing jurisdiction of court system). Consequently bankruptcy judges have jurisdiction to exercise the contempt power only if they have a statutory basis for that authority.
 
 B. Implied Statutory Authority
 
 10
 There is no express statutory authority granting the contempt power to bankruptcy judges. We therefore consider whether such power may be implied. The creditors and intervenor United States contend that statutory grants of jurisdiction in title 28, 28 U.S.C. Sec. 157, and title 11, 11 U.S.C. Sec. 105, impliedly empower bankruptcy judges to issue civil contempt orders. Under 28 U.S.C. Sec. 157(b)(1), bankruptcy judges can "hear and determine all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11 ... and may enter appropriate orders and judgments." District courts may refer such cases to bankruptcy judges. Id. Sec. 157(a). The creditors and the government argue that the substantive power of bankruptcy judges to enter "appropriate orders and judgments" in core proceedings, id. Sec. 157, as well as the authorization that the court issue "necessary or appropriate" orders, processes or judgments under 11 U.S.C. Sec. 105(a), necessarily includes the contempt power. We cannot discern, from the language of the statutes alone, whether Congress intended to confer the power of contempt on bankruptcy judges. When the meaning of statutory language is unclear, we consider legislative history to assist in interpretation. Heppner v. Alyeska Pipeline Serv. Co., 665 F.2d 868, 871 (9th Cir.1981). We examine Congress's historical conferral of the contempt power on bankruptcy courts prior to and following the 1978 Act, and we find the general language of sections 157 and 105 does not impliedly confer the contempt power on bankruptcy judges.
 
 
 11
 1. The Contempt Power in Bankruptcy Courts Prior to the 1978 Act
 
 
 12
 The power to imprison or fine summarily is an awesome power. As the Supreme Court stated in Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968):
 
 
 13
 The court has long recognized the potential for abuse in exercising the summary power to imprison for contempt--it is an "arbitrary" power which is "liable to abuse." Ex parte Terry, 128 U.S. 289, 313, 9 S.Ct. 77, 83, 32 L.Ed. 405 (1888). "[I]ts exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions." Cooke v. United States, 267 U.S. 517, 539, 45 S.Ct. 390, 396, 69 L.Ed. 767 (1925).
 
 
 14
 Id. at 202, 88 S.Ct. at 1482 (footnote omitted).[2] In recognition of the potential for abuse, Congress, when conferring the contempt power, has invariably placed restrictions on its exercise. It early restricted the criminal contempt powers of article III courts. 18 U.S.C. Sec. 401; see Bloom 391 U.S. at 202-04, 88 S.Ct. at 1482-83 (outlining history of Congressional restrictions on criminal contempt power of article III courts beginning with drastic curtailment of the contempt power in the Act of March 2, 1831, 4 Stat. 487). Congress has also placed limits on the civil contempt power of article III courts. 28 U.S.C. Sec. 1826.
 
 
 15
 The creditors and the government assert that the bankruptcy judges' contempt power has been well established over the past three-quarters of a century of bankruptcy practice. They rely heavily on Goggin v. Bolsa Chica Oil Corp. (In re Sterling), 125 F.2d 104 (9th Cir.1942), for the proposition that bankruptcy courts exercised the contempt power under the Act of July 1, 1898, chs. 540, 541, 30 Stat. 544 (repealed 1978) [hereinafter 1898 Act]. See id. at 106 & n. 4 ("That courts of bankruptcy have jurisdiction to punish contempts is clear."); see also Boyd v. Glucklich, 116 F. 131, 135 (8th Cir.1902) ("The moment the court [of bankruptcy] was called into existence it became possessed of this [contempt] power...."). A close reading of the Sterling and Boyd cases, however, reveals that this argument has a purely semantic appeal. The "bankruptcy court," prior to the Bankruptcy Act of November 6, 1978, Pub.L. 95-598, 92 Stat. 2549 (codified as amended at 11 U.S.C. and scattered sections of 28 U.S.C.) [hereinafter 1978 Act], was the article III federal district court. Before the 1978 Act, there was no "court of bankruptcy" independent of or separate from the federal district court.[3]
 
 
 16
 Sterling and Boyd are thus inapposite. The "bankruptcy court" possessed of the contempt power was the district court, and not its adjunct, the bankruptcy referee. Sterling, for example, does not suggest that the bankruptcy referee possessed the contempt power. Accord Boyd, 116 F. at 135 ("The reference to the power to punish for contempt in section 41 of the bankrupt [sic] act was not to confer the power on the court of bankruptcy, for its creation alone invested it with that power, but it was to make it plain that the power was not conferred on referees in bankruptcy...."); see also In re Rubin, 378 F.2d 104, 106 (3d Cir.1967); O'Hagan v. Blythe, 354 F.2d 83, 84 (2d Cir.1965); In re Haring, 193 F. 168, 171 (W.D.Mich.1912), aff'd sub nom. In re Holden, 203 F. 229 (6th Cir.), cert. denied, 229 U.S. 621, 33 S.Ct. 1049, 57 L.Ed. 1355 (1913). Section 41 of the 1898 Act, ch. 541, 30 Stat. 544, 556 (codified as amended at 11 U.S.C. Sec. 69 (1976)) (repealed 1978), defined contemptuous behavior before a referee and provided that the facts of such behavior be certified to a judge who would adjudge the contempt. Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (codified in scattered sections of 11 U.S.C. and 28 U.S.C.) [hereinafter 1984 Amendments], the "bankruptcy court" is the name given a unit of the district court consisting of certain nonarticle III officers. 28 U.S.C. Sec. 151. The pre-1973 cases concerning the powers of the "bankruptcy court" therefore provide no support for the exercise of the contempt power by officers denominated "bankruptcy judges" in the 1984 Amendments.
 
 
 17
 In 1973, the United States Supreme Court pursuant to its rulemaking authority under 28 U.S.C. Sec. 2075 adopted the Rules of Bankruptcy Procedure, abrogating the earlier General Orders in Bankruptcy. Bankr.R., 411 U.S. 989, 93 S.Ct. 3081, 37 L.Ed.2d XXXI (1973). For the first time, the bankruptcy referees (called "bankruptcy judges") were granted a limited power of contempt pursuant to Bankr.R. 920, 11 U.S.C.App. 254-55 (1982) (repealed 1983). The rule provided that a referee, without certification to a district court judge, could punish both civil and criminal contemptuous behavior prohibited by section 41(a) of the 1898 Act (repealed 1978) by imposing a fine of not more than $250. If the referee believed the contemptuous behavior warranted imprisonment or a fine greater than $250, the referee was required to certify the facts to the district judge for disposition. The rationale for this limited power of contempt was expressed in the Advisory Committee's Note accompanying Rule 920:
 
 
 18
 The premise of the change in procedure for dealing with minor contempts is that the certification requirement of Sec. 41b of the Act [11 U.S.C. Sec. 69(b) (1976) (repealed 1978) ] has in effect deprived the referee of the necessary power to protect proceedings before him from petty disturbances and acts of disobedience because of the inordinate inconvenience entailed by the statutory procedure for the judge and the referee.
 
 
 19
 Bankr.R. 920 adv. comm. note, 11 U.S.C.App. 255 (1982) (repealed 1983); see also Fidelity Mortgage Investors v. Camelia Builders (In re Fidelity Mortgage Investors, 550 F.2d 47, 50 (2d Cir.1976) (Rule 920 premised on statutory authority of Sec. 41(a)), cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).[4]
 
 
 20
 Justice Douglas dissented from adoption of the rule: "The proposed new Rule 920 makes a change [from Sec. 41 of the 1898 Act, ch. 541, 30 Stat. 544, 556 (codified as amended at 11 U.S.C. Sec. 69) (repealed 1978) ], giving referees power to cite and punish for contempt in both the civil and criminal sense.... The Advisory Notes call this grant of power to the referees 'minor,' since referees will not be allowed to imprison an offender or fine him more than $250. But the proposed Rule does change Sec. 41 of the present Act which has been with us at least since 1898." 411 U.S. at 993, 93 S.Ct. at 3082, 37 L.Ed.2d XXXII (Douglas, J., dissenting from adoption of rules).
 
 
 21
 Thus, before the 1978 Act, article I bankruptcy judges were authorized to punish for contempt, if at all, only by imposing a maximum fine of $250 under Bankr.R. 920. The pre-1978 history of the contempt power in bankruptcy courts lends no support to the theory that Congress intended to confer the contempt power on bankruptcy judges.
 
 2. The Contempt Power and the 1978 Act
 
 22
 When Congress passed the 1978 Act it gave sweeping powers to bankruptcy courts, including civil and criminal contempt powers. However, Congress showed concern about the extent of the contempt power in the bankruptcy court. The Senate version of the 1978 Act would have limited the power to maximum fines of $1,000 with no power to imprison, absent certification. S.Rep. No. 989, 95th Cong., 2d Sess. 148, reprinted in 1978 U.S.Code Cong. & Admin.News, 5787, 5934. Congress nevertheless expanded the definition of "court of the United States" to include a bankruptcy court, see 1978 Act, Pub.L. 95-598, Sec. 213, 92 Stat. 2549, 2661 [hereinafter section 213], repealed by 1984 Amendments, Pub.L. No. 98-353, Sec. 113, 98 Stat. 333, 343, thereby impliedly granting the bankruptcy court, as a "court of the United States", 28 U.S.C. Sec. 451, the power of civil contempt under 28 U.S.C. Sec. 1826;[5] see also H.R.Rep. No. 595, 95th Cong., 1st Sess. 436, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6392 (section 213 makes provisions of title 28 generally applicable to bankruptcy judges). As a court of the United States, the bankruptcy court would also have discretionary criminal contempt powers, within limits, pursuant to 18 U.S.C. Sec. 401.[6] However, Congress did not give bankruptcy courts the full criminal contempt jurisdiction of courts of the United States.[7] Rather, it expressly restricted the power in section 241(a) of the 1978 Act, Pub.L. 95-598, Sec. 241(a), 92 Stat. 2549, 2671 (codified at 28 U.S.C. Sec. 1481 (1982)) (repealed 1984) [hereinafter section 1481],[8] which provided:
 
 
 23
 A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.
 
 
 24
 Thus, under the 1978 Act, Congress expressly granted bankruptcy courts civil and criminal contempt powers, subject to the restrictions of sections 1481 and 1826.
 
 3. Contempt Power After Northern Pipeline
 
 25
 The Supreme Court ruled in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), that Congress's general jurisdictional grant of power to the bankruptcy courts in the 1978 Act was unconstitutional.[9] The Court held that by granting article I bankruptcy courts authority to adjudicate state-created rights, as distinguished from federally created "public rights," Congress had encroached on the authority the Constitution reserved to article III courts and thus threatened the independence of the judiciary, and the separation of powers.
 
 
 26
 To meet the Court's objections, Congress amended the 1978 Act,[10] repealing section 213, which defined the bankruptcy court as a "court of the United States" and section 1481, which conferred bankruptcy courts with the powers of courts of equity, law and admiralty and restricted the power of criminal contempt.[11] By abrogating these broad grants of express jurisdiction, Congress withdrew its grant of contempt power in the 1978 Act.[12]
 
 
 27
 The Bankruptcy Rules, promulgated after the 1978 Act but before the 1984 Amendments, cannot standing alone be construed as authority for bankruptcy judges' exercise of contempt power. The Rules established procedures for the bankruptcy court to exercise criminal contempt powers pursuant to section 1481 and specified that findings of criminal contempt beyond the bankruptcy court's power to punish under section 1481 required certification to the district court. Bankr.R. 9020, 461 U.S. 973, 1081 (1983) [hereinafter Bankr.R. 9020 (1983) ], amended by Amendments to the Federal Rules of Bankruptcy Procedure, 107 S.Ct. CX, CXXX-III-IV, 94 L.Ed.2d i, xl (May 1987) (effective August 1, 1987) [hereinafter Bankr.R. 9020 (1987 Amendments) ] (text of amended Rule at infra n. 19).[13] However, Bankr.R. 9020 (1983) is expressly based on section 1481, and the 1984 Amendments repealed section 1481. See Hubbard v. Fleet Mortgage Co., 810 F.2d 778, 781 n. 4 (8th Cir.1987) (bankruptcy court does not exceed its jurisdiction by following 9020(a)(3) procedures for certification, but basis of contempt authority is section 1481 which is no longer effective).[14]
 
 
 28
 There is no other statutory authority that alludes to contempt in title 11 or title 28. The legislative history of the 1978 Act and Rules therefore offers no support for the exercise of the contempt power after the 1984 Amendments. Nevertheless, the creditors and the government contend that 28 U.S.C. Sec. 157 and 11 U.S.C. Sec. 105 impliedly confer the contempt power on bankruptcy judges.
 
 
 29
 Section 157 is at the heart of Congress's response to the Supreme Court's ruling in Northern Pipeline. It was designed to segregate those "core" proceedings over which a bankruptcy judge could presumably exercise plenary authority, 28 U.S.C. Sec. 157(b)(1), from "related" proceedings over which an article I bankruptcy judge could constitutionally only determine facts and recommend dispositions to article III judges, 28 U.S.C. Sec. 157(c)(1); see supra at n. 10. Core proceedings are defined in 28 U.S.C. Sec. 157(b)(2), which provides in relevant part:
 
 
 30
 Core proceedings include, but are not limited to--
 
 
 31
 (A) matters concerning the administration of the estate;
 
 
 32
 ....
 
 
 33
 (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
 
 
 34
 The contempt issue in this case arose in a "core" involuntary bankruptcy petition. Consequently, the government argues, the contempt order must also be treated as core because it is part of the underlying cause.
 
 
 35
 We are not persuaded that in giving bankruptcy judges authority over core proceedings Congress also gave them contempt power in those proceedings. It simply does not follow that "because an official is empowered to make decisions, he must also be able to punish those who refuse to accede to them." In re Omega Equip. Corp., 51 Bankr. at 573. Absent indications of congressional intent to confer the contempt power in core proceedings, and in view of Congress's repeal of both sections limiting civil and criminal contempt powers in the 1978 Act, we refuse to infer the grant of the power in such proceedings. Nor are we convinced that the exercise of the contempt power can be defined as itself a core proceeding. But see Kellogg v. Chester, 71 Bankr. 36, 38-39 (N.D.Tex.1987) (civil contempt is constitutionally exercised core matter but criminal contempt is a noncore matter). Justifying the exercise of the contempt power by defining it as a core proceeding ignores the rationale for the core/noncore dichotomy: to avoid the constitutional difficulties created by Northern Pipeline. Northern Pipeline's constitutional concern for preventing encroachment upon the authority of article III courts over adjudication of state-created rights is not implicated by the exercise of the contempt power.[15]
 
 
 36
 Section 157 is the only provision in title 28 purporting to grant substantive powers to the bankruptcy judges. The power of the bankruptcy court under title 11 is determined by title 28. 11 U.S.C. Sec. 105(c). Title 11 provides that:
 
 
 37
 The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]....
 
 
 38
 11 U.S.C. Sec. 105(a). Section 105(a) is also not a persuasive source of the contempt power. Section 105(a) confers power to issue procedural orders necessary or appropriate to the bankruptcy court's jurisdiction. But the broad, general language of section 105(a) is not a surrogate for the specific grants of limited contempt authority repealed by the 1984 Amendments. We find it doubtful that Congress would have vested the bankruptcy court, through section 105, with a broader power of contempt than that of the article III courts that refer and review the bankruptcy courts' decisions or that of other similarly situated article I courts.[16] We cannot divine from the language of section 105 the limitations Congress would surely have placed on the contempt power of bankruptcy judges if it had intended to confer such power. Section 105(a) was enacted by the 1978 Act and existed alongside the restrictions on contempt in 28 U.S.C. Sec. 1481 (1982) (repealed 1984) and 28 U.S.C. Sec. 1826. Congress repealed the jurisdictional sections and their references to the bankruptcy court's contempt power because the grant of authority was overly broad. We do not believe that Congress, by enacting an amendment repealing the bankruptcy court's contempt power and limiting its jurisdiction, intended thereby to confer the contempt power impliedly through sections 157 or 105 free of any express restrictions.
 
 
 39
 As we have shown, Congress historically limited the jurisdiction of article I bankruptcy judges to issue contempt judgments, even under the sweeping powers granted in the 1978 Act. The creditors and the government would have us assume that Congress granted bankruptcy judges civil contempt power, including the power to imprison, because there is no express language to the contrary. This we will not do. If Congress had intended that bankruptcy judges should possess such power, it well knew how to confer it.[17]
 
 CONCLUSION
 
 40
 Based on Congress's intent in the 1984 Amendments to cure the overly broad jurisdictional grant to bankruptcy judges in the 1978 Act and on our conclusion that bankruptcy judges' exercise of the civil contempt power is not express or implied in the new Congressional enactments, we hold that Congress has not conferred the civil contempt power on bankruptcy judges. We conclude that the bankruptcy judge had no jurisdiction to issue the contempt order.[18] Therefore, the bankruptcy court judge must, as under earlier bankruptcy procedure, certify the facts to the district court to review de novo and determine whether to issue the order.[19]
 
 
 41
 The order of the district court is VACATED and REMANDED with directions to vacate the bankruptcy court's order for lack of subject matter jurisdiction.
 
 
 
 *
 Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 Civil contempt is a refusal to do an act the court has ordered for the benefit of a party; the sentence is remedial. Criminal contempt is a completed act of disobedience; the sentence is punitive to vindicate the authority of the court. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911)
 
 
 [2]
 Although Bloom dealt with the power of criminal contempt, it was the summary nature of the infliction of punishment, no different from that used in the civil contempt proceeding in this case, that concerned the Court. See Bloom, 391 U.S. at 202-08, 88 S.Ct. at 1482-85
 
 
 [3]
 A detailed history of the evolution of the federal bankruptcy courts may be found in H.R.Rep. No. 595, 95th Cong., 1st Sess. 7-9, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 5969-71
 
 
 [4]
 Under Pub.L. 88-623, Sec. 1, 78 Stat. 1001 (1964) (codified as amended at 28 U.S.C. Sec. 2075) the Supreme Court was authorized to promulgate Bankruptcy Rules. Procedural rules were given particular weight: "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." The 1978 Act amended 28 U.S.C. Sec. 2075 by striking out that sentence
 
 
 [5]
 28 U.S.C. Sec. 1826 provides in part:
 (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, ... the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of--
 (1) the court proceeding, or
 (2) the term of the grand jury, including extensions,
 before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.
 (b) ... Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.
 
 
 [6]
 18 U.S.C. Sec. 401 provides:
 A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority and none other, as--
 (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
 (2) Misbehavior of any of its officers in their official transactions;
 (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.
 
 
 [7]
 Title 18 provides no definition of "court of the United States," as the term appears in 18 U.S.C. Sec. 401. However, because Sec. 401 was originally codified in title 28, we may look to the definition of "court of the United States" provided in 28 U.S.C. Sec. 451
 
 
 [8]
 Title II of the 1978 Act, including section 1481, was repealed by 1984 Amendments, Pub.L. 98-353, Sec. 113, 98 Stat. 333, 343. See SEC v. Danning (In re Carter), 759 F.2d 763, 766 (9th Cir.1985)
 
 
 [9]
 Specifically, the Supreme Court overturned Sec. 241(a) of the 1978 Act, Pub.L. 95-598, 92 Stat. 2549, 2668-69 (codified at 28 U.S.C. Sec. 1471(c)) (repealed 1984), which gave the bankruptcy courts original and exclusive jurisdiction over all cases under title 11, and original jurisdiction of all cases arising in or related to cases under title 11. Northern Pipeline, 458 U.S. at 87, 102 S.Ct. at 2880; see also Lucas v. Thomas (In re Thomas), 765 F.2d 926, 929 (9th Cir.1985)
 
 
 [10]
 Congress characterized the bankruptcy courts as "units" of the district courts, 28 U.S.C. Sec. 151, rather than "legislative" courts. Under the "public rights/private rights" dichotomy for article III analysis, independent legislative courts may determine only controversies in the "public rights" category. Northern Pipeline, 458 U.S. at 69-70, 102 S.Ct. at 2870-71 (1982) (Brennan, J., plurality opinion). The bankruptcy courts adjudicate not only the restructuring of debtor-creditor relations, arguably "public rights" at the core of the federal bankruptcy power, id. at 71, 102 S.Ct. at 2871; see 28 U.S.C. Sec. 157(b)(1) (bankruptcy judges are empowered to hear and determine all "core" proceedings), but they also hear private rights or controversies in "related" proceedings, final determination of which must, according to Northern Pipeline, be vested in article III courts, 458 U.S. at 77-79, 102 S.Ct. at 2874-75; see 28 U.S.C. Sec. 157(c)(1). In related proceedings the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court, which reviews them de novo and enters final orders or judgments. Id. Thus, the bankruptcy courts are hybrid courts, empowered in part with jurisdiction over public rights that could likely be vested in independent article I legislative courts, Northern Pipeline, 458 U.S. at 71, 102 S.Ct. at 2871, and in part with limited fact-finding authority as article I adjuncts to article III courts. Id., at 78-79, 102 S.Ct. at 2875. A majority of the Supreme Court has not endorsed the "public rights/private rights" bright line for article III analysis. Subsequent cases caution against carrying the analysis beyond the circumstances of Northern Pipeline. See Commodity Futures Trading Comm'n v. Schor, --- U.S. ----, 106 S.Ct. 3245, 3256, 92 L.Ed.2d 675 (1986); Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 585-86, 105 S.Ct. 3325, 3335-36, 87 L.Ed.2d 409 (1985)
 
 
 [11]
 The bankruptcy judge's action is controlled by the 1984 Amendments as he exercised the civil contempt power on November 29, 1984, well after the June 27, 1984 date of the repeals of sections 213 and 1481. See 1984 Amendments, Pub.L. 98-353, Sec. 122(a) & (c), 98 Stat. 333, 346
 
 
 [12]
 Specific legislative history of the 1984 Act is sparse. No Senate or House report was submitted with the legislation, nor did the House Conference Report contain a Joint Explanatory Statement. There are statements by legislative leaders on the floor of Congress, see, e.g., 130 Cong.Rec. H7489, H7492 (daily ed. June 29, 1984), reprinted in 1984 U.S.Code Cong. & Admin.News 576, 579; 130 Cong.Rec. S8887, S8889, S8891 (daily ed. June 29, 1984), reprinted in 1984 U.S.Code Cong. & Admin.News 581, 586, 590; and an Analysis of Proposed Amendments to the Bankruptcy Act of 1978, submitted during floor action on the bill by Senator Hatch, 130 Cong.Rec. S8891 (daily ed. June 29, 1984) (statement of Sen. Hatch), reprinted in 1984 U.S.Code Cong. & Admin.News 601. Aside from a few general allusions, however, these remarks do not address the powers of the newly reformed bankruptcy courts
 
 
 [13]
 Bankr.R. 9020 (1983) provides in relevant part:
 (a) PROCEDURE
 (1) SUMMARY DISPOSITION. Criminal contempt which may be punished by a bankruptcy judge acting pursuant to 28 U.S.C. Sec. 1481 may be punished summarily by a bankruptcy judge if he saw or heard the conduct constituting the contempt and if it was committed in his actual presence. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.
 (2) DISPOSITION AFTER A HEARING. Criminal contempt which may be punished by a bankruptcy judge acting pursuant to 28 U.S.C. Sec. 1481, except when determined as provided in paragraph (1) of this subdivision, may be punished by the bankruptcy judge only after a hearing on notice....
 (3) CERTIFICATION TO DISTRICT COURT. If it appears to a bankruptcy judge that criminal contempt has occurred but the court is without power under 28 U.S.C. Sec. 1481, to punish or to impose the appropriate punishment for the criminal contempt the judge may certify the facts to the district court.
 
 
 [14]
 The advisory committee note accompanying Bankr.R. 9020 (1983) suggests that case law governing civil contempt sanctions in district courts would be equally applicable to bankruptcy courts. See 11 U.S.C.App. 265, Bankr.R. 9020, adv. comm. note. However, we have noted that Congress repealed the statute that defined bankruptcy courts as courts of the United States, and the district court's civil contempt power is no longer applicable to bankruptcy courts
 
 
 [15]
 We recognize some courts have raised questions as to the constitutional limits on Congress's power to confer contempt authority on non-article III bankruptcy judges. See, e.g., In re Continental Air Lines, 61 Bankr. 758, 775 (S.D.Tex.1986) (bankruptcy court cannot impose final contempt order because inconsistent with constitutional limitations); Tele-Wire Supply Corp. v. Presidential Fin. Corp. (In re Indus. Tool Distr.), 55 Bankr. 746, 750-51 (N.D.Ga.1985) (statutory grant of contempt power to bankruptcy judges unconstitutional); James v. Cryts (In re Cox Cotton Co., 24 Bankr. 930, 947 (E.D.Ark.1982) (article I bankruptcy judge cannot be vested with power of civil contempt because contempt power is an "inherently judicial" power reserved for article III courts), vacated on other grounds sub nom. Lindsey v. Ipock, 732 F.2d 619 (8th Cir.), cert. denied, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984); but see Kellogg, 71 Bankr. at 39; Better Homes v. Budget Serv. Co., 52 Bankr. 426 (bankruptcy judges may constitutionally exercise civil contempt power), aff'd on other grounds, 804 F.2d 289 (4th Cir.1986). We do not reach the constitutional question here because we decide on statutory grounds
 
 
 [16]
 Federal magistrates, article I judges subject to extensive oversight by federal district courts, see Pacemaker Diagnostic Clinic v. Instromedix, Inc., 725 F.2d 537, 540 (9th Cir.), cert. denied, 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); 28 U.S.C. Sec. 636, have no power of contempt themselves but must certify the facts to a judge of the district court. 28 U.S.C. Sec. 636(d). The district court judge then hears the evidence and, if the evidence warrants, issues the contempt order. Id. Courts-martial, also article I courts, are likewise limited in their exercise of the power of contempt. A statute provides for punishment of criminal contempt if committed in the court's presence, and limits punishment to thirty days or a fine of $100, or both. 10 U.S.C. Sec. 848. The Tax Court, an article I tribunal, see 26 U.S.C. Sec. 7441, is restricted in its use of the contempt power by a statute identical to 18 U.S.C. Sec. 401, see 26 U.S.C. Sec. 7456(c). See also Guam Civ.Proc.Code Secs. 1209-22 (restricting contempt power in article I territorial court). Finally, Congress has restricted even its own contempt powers. See 2 U.S.C. Secs. 192 & 194
 
 
 [17]
 Even the government admits that the order to imprison Idell by the bankruptcy judge in this case is without precedent in bankruptcy practice
 
 
 [18]
 Because we conclude that the bankruptcy court had no power to issue the contempt order in question, we do not reach the merits of that order. We therefore express no opinion on whether Idell could properly invoke the Fifth Amendment in response to the request to fill out the list of assets and creditors or whether he made sufficient showing to sustain that invocation
 
 
 [19]
 We note that this procedure comports with that portion of Bankr.R. 9020 (1987 Amendments) that requires that contested contempt orders be treated as though they were beyond the bankruptcy judges' jurisdiction, i.e. as noncore matters. The advisory committee note states that the Rule "recognizes that bankruptcy judges may not have the power to punish for contempt." 114 F.R.D. 193, 396 (1987). We express no opinion as to that portion of the new rules that allows a bankruptcy judge's contempt order to stand if the party does not timely file written objections with the district court
 Bankr.R. 9020 (1987 Amendments) provides in relevant part:
 (a) CONTEMPT COMMITTED IN PRESENCE OF BANKRUPTCY JUDGE. Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.
 (b) OTHER CONTEMPT. Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense....
 (c) SERVICE AND EFFECTIVE DATE OF ORDER; REVIEW. The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033....
 Bankr.R. 9033 (1987 Amendments) provides in relevant part:
 (a) SERVICE. In non-core proceedings heard pursuant to 28 U.S.C. Sec. 157(c)(1), the bankruptcy judge shall file proposed findings of fact and conclusions of law....
 (b) OBJECTIONS: TIME FOR FILING. Within 10 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection....
 (d) STANDARD OF REVIEW. The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence or recommit the matter to the bankruptcy judge with instructions.