James Dean BINGMAN,
Plaintiff–Appellee,

v.

Daniel WARD, Prison Dentist; James Mickey Gamble, Warden; Don Sullivan, Infirmary Supervisor; Wade Heimbough, Head Nurse Infirmary, Defendants–Appellants.

No. 95–36291.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1996.

Decided Nov. 15, 1996.

---

David L. Ohler, Montana Department of Corrections, Helena, Montana, for defendants-appellants.

Jeffrey T. Renz, Montana Defender Project, University of Montana School of Law, Missoula, Montana, for plaintiff-appellee.

Before: BROWNING, D.W. NELSON and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

James D. Bingman is a prisoner in the Montana State Prison. He brought this action against the prison dentist, Daniel Ward, and other employees of the prison (collectively "prison officials") because, he claimed, they were not giving him proper dental care. He asserted that his constitutional rights had been violated and sued for damages and injunctive relief. See 42 U.S.C. § 1983. The magistrate judge issued a preliminary injunction and later determined that the prison officials had not abided by his order. He found them in contempt and imposed sanctions. This appeal ensued. We have determined that the magistrate judge lacked juris-

diction. We, therefore, vacate the order and remand for further proceedings.

## BACKGROUND

When Bingman filed this action seeking relief from the prison officials' indifference to his dental needs, the parties agreed that the case could proceed before a magistrate judge and that any appeal could be taken directly to this Court. *See* 28 U.S.C. § 636(c). After receiving evidence, the magistrate judge determined that there were serious problems regarding dental care at the prison and then issued a somewhat ambiguous preliminary injunction. That injunction told the prison officials to "expeditiously provide" Bingman with "necessary dental care," and to "continue to provide [him] with dental services that may be medically indicated." Emergency needs were to be attended to within seven days, while non-urgent needs were to be attended to within 60 days. However, the officials were also told that they were not to provide services to Bingman in a manner that helped him "at the expense of inmates with higher priority needs or ranking on the waiting lists." The prison officials were also ordered to present a proposal to eliminate the deficiencies in their prison's dental care system.

Bingman was not satisfied with the service he was given, nor was he satisfied with the prison officials' compliance with the other terms of the order. He asked that the prison officials be held in contempt. Ultimately, the magistrate judge agreed that they should be and he then imposed monetary sanctions upon them. He directed that the prison officials pay the sum of $1,450 to the Clerk of the Court because they had not submitted a plan within the allotted time. He further ordered them to pay $500 to Bingman because they had not given him the expeditious care required by the order.

The magistrate judge did not indicate that the sanctions could be avoided by some further action on the part of the officials, nor did he indicate that they were compensatory. Rather, he declared that they were "to punish [the prison officials] for failing to timely and expeditiously comply with the terms ... of the injunction, and, further, to encourage adherence to this or other orders of [the] Court in the future...."

The prison officials appealed. They contend that the magistrate judge lacked jurisdiction to hold them in contempt and that he should not, in any event, have done so. We agree with their first contention. We need not, and will not, reach the second contention because that must await a proper development of the matter in a proper forum.

## JURISDICTION

Before we proceed further, we must address the question of our own jurisdiction. It is clear that we do not have jurisdiction to hear interlocutory appeals from civil contempt orders entered against parties to litigation. *See Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 859 F.2d 681, 687 (9th Cir.1988); *Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.*, 625 F.2d 881, 883 (9th Cir.1980). However, we do have jurisdiction to hear appeals from criminal contempt orders because they are "appealable when entered." *Prof'l Airmen*, 625 F.2d at 883. Therefore, we must decide whether the order before us was one for civil contempt or one for criminal contempt.

As we have said: "Civil contempt is a refusal to do an act the court has ordered for the benefit of a party; the sentence is remedial. Criminal contempt is a completed act of disobedience; the sentence is punitive to vindicate the authority of the court." *In re Sequoia Auto Brokers Ltd., Inc.*, 827 F.2d 1281, 1283 n. 1 (9th Cir.1987). While that explication of the dichotomy between civil and criminal contempt is helpful, it is not quite complete. The Supreme Court has suggested that a fine "is remedial when it is paid to the complainant, and punitive when it is paid to the court...." *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988). That would suggest that the $500 payable to Bingman was remedial, while the $1,450 payable to the court was punitive.

However, the issue is not quite as clear as that either because the amount payable to Bingman was not intended to be compensato-

ry; it was intended to be punitive to the prison officials because of their completed action or inaction. In that regard, the Supreme Court has gone on to say: "An unconditional penalty is criminal in nature because it is 'solely and exclusively punitive in character.' ... A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act." *Id.* at 633, 108 S.Ct. at 1430 (citation omitted). On that theory, both of the amounts assessed against the prison officials were criminal because both of them were unconditional and punitive.

The Supreme Court brought additional clarity to this question in *International Union, UMW v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). There the Court opined that the nature of a contempt sanction is not to be decided from its label alone but, rather, " 'from an examination of the character of the relief itself.' " *Id.* at ——, 114 S.Ct. at 2557 (quoting *Hicks,* 485 U.S. at 636, 108 S.Ct. at 1432). The Court went on to explain:

> A contempt fine accordingly is considered civil and remedial if it either "coerce[s] the defendant into compliance with the court's order, [or] ... compensate[s] the complainant for losses sustained." Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge. Thus, a "flat, unconditional fine" totalling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance.

*Id.* at ——, 114 S.Ct. at 2558 (citations omitted).

In this case, the magistrate judge did not impose either monetary sanction for the purpose of compensating Bingman. The $1,450 sum was payable to the court; there can be no doubt about its punitive character. Moreover, the $500 sum payable to Bingman was not to compensate him for any actual or estimated harm. The magistrate judge did not make any reference whatever to compensation. He made it clear that the whole purpose was to punish the prison officials. While he added that he also desired to en-

courage compliance with the order in question and with future orders, that alone did not convert these fixed sanctions from criminal to civil. Virtually every punishment has a concomitant deterrent purpose. *See Bagwell,* 512 U.S. at ——, 114 S.Ct. at 2557.

Therefore, we hold that both of the sanctions assessed against the prison officials were criminal in nature. As a result, we have jurisdiction over the appeal from both mulcts.

## STANDARD OF REVIEW

■ We review the legal question of whether the magistrate judge had jurisdiction to impose a criminal contempt sanction *de novo. See United States v. Powell,* 24 F.3d 28, 30 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 525, 130 L.Ed.2d 430 (1994).

## DISCUSSION

■ Having placed our own jurisdiction on a firm footing, we must now turn to the question of the magistrate judge's. We find that jurisdiction lacking—magistrate judges do not have the power to adjudicate criminal contempts.

■ We start, as we must, with the unremarkable proposition that magistrate judges are not Article III judges; they are simply "creatures of statute, and so is their jurisdiction. We cannot augment it...." *N.L.R.B. v. A–Plus Roofing, Inc.,* 39 F.3d 1410, 1415 (9th Cir.1994). That jurisdiction is both set forth and limited in § 636 of Title 28 U.S.C. Section 636(e) quite explicitly covers the issue before us. It reads, in pertinent part:

> In a proceeding before a magistrate, any of the following acts or conduct shall constitute a contempt of the district court for the district wherein the magistrate is sitting: (1) disobedience or resistance to any lawful order, process, or writ.... Upon the commission of any such act or conduct, the magistrate shall forthwith certify the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this section an order re-

quiring such person to appear before a judge of that court upon a day certain to show cause why he should not be adjudged in contempt by reason of the facts so certified. A judge of the district court shall thereupon, in a summary manner, hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person. . . .

There can be no doubt that the provision covers criminal contempt proceedings. We have said as much. *See Sequoia Auto Brokers,* 827 F.2d at 1290 n. 16 ("Federal magistrates . . . have no power of contempt themselves but must certify the facts to a judge of the district court."); *see also United States v. Ritte,* 558 F.2d 926, 927 (9th Cir.1977) (per curiam) ("contemptuous acts . . . related to proceedings before a magistrate must be referred to a district judge for adjudication."); *In re Kitterman,* 696 F.Supp. 1366, 1368–69 (D.Nev.1988).

The restriction is not unwise. The power to hold persons in criminal contempt is not only awesome, but is also an inherent power of Article III judges. *Sequoia Auto Brokers,* 827 F.2d at 1284. In fact, when upholding the constitutionality of the magistrate judge system itself, we noted that one of the ways that Article III court authority was preserved was found in the provision that "[d]istrict courts retain the power to adjudge a party in contempt." *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.,* 725 F.2d 537, 545 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). Similarly, when we upheld the power of a magistrate judge to impose discovery sanctions, we also opined that § 636(e), "which governs the jurisdiction and powers of magistrates, requires a magistrate to refer contempt charges to a district court judge." *Grimes v. City & County of San Francisco,* 951 F.2d 236, 240 (9th Cir.1991). Other circuits have reached the same conclusion. *See Taberer v. Armstrong World Indus., Inc.,* 954 F.2d 888, 907 (3d Cir.1992) (magistrate judges cannot try contempts in proceedings before them); *Geras v. Lafayette Display Fixtures, Inc.,* 742 F.2d 1037, 1044 (7th Cir.1984) (one support for the constitutionality of the magistrate judge system is the vesting of the contempt power in district judges); *Collins v. Foreman,* 729 F.2d 108, 117 (2d Cir.) (even in § 636(c) references the contempt power remains with the district judge), *cert. denied,* 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984); *cf. Proctor v. State Government of North Carolina,* 830 F.2d 514, 517 (4th Cir.1987) (contempt proceedings must be certified to district judge for decision).

It is no accident that our emphasis, and that of other circuits, has been on the contempt provision as a guarantee that Article III courts will retain their constitutional responsibilities and powers. Many respected jurists have expressed great disquiet about the notion of placing the federal judicial power in the hands of non-Article III judges, even when the parties consent. *See e.g., Geras,* 742 F.2d at 1045 (Posner, J., dissenting); *Pacemaker Diagnostic,* 725 F.2d at 547 (Schroeder, J., dissenting, joined by Pregerson, J. and Canby, J.). The fear that, as a practical matter, magistrate judges will be able to operate without oversight from Article III judges is surely alleviated if those same magistrate judges are forbidden to enforce their own orders through criminal contempt proceedings. That part of judicial power, at least, will be securely in the hands of judges who have all of the protections conferred by the Constitution; they will be forced to review both the basis and the conclusion before someone is held in criminal contempt of court.

Bingman argues, however, that when Congress enacted § 636(c) it, somehow, repealed § 636(e) as far as consent reference cases are concerned. That does not appear on the face of the statute. Section 636 covers many kinds of proceedings. In fact, the development of magistrate judge authority can be called crescive. Any one of those proceedings could confront a magistrate judge with someone who is acting in a criminally contemptuous manner. Congress foresaw that. Nevertheless, it has made it clear that magistrate judges shall not deal with those contempts by themselves. Rather, they must certify the facts to a district judge. Bingman's argument to the contrary is refuted by our case law. For example, in *Pacemaker Diagnostic* the very issue was whether

§ 636(c) itself was constitutional, and the existence of the restraint imposed by § 636(e) is one reason that we thought it was. 725 F.2d at 539–40, 545. *See also Grimes,* 951 F.2d at 240 (magistrate judges lack contempt authority); *Sequoia Auto Brokers,* 827 F.2d at 1290 n. 16 (magistrate judges have no contempt power).

In a similar vein, Bingman argues that because the prison officials did not raise the issue of the magistrate judge's authority at trial, they have consented to it. Two major reasons make that argument otiose. In the first place, the prison officials never did file a consent to the conduct of criminal contempt proceedings by a magistrate judge. They only consented to the magistrate judge's jurisdiction under § 636(c) and, as we have said, that does not overcome the removal of jurisdiction in § 636(e). *Cf. Taberer,* 954 F.2d at 907–08 (even if a contempt proceeding were treated as a misdemeanor trial, there was no specific written consent to it).

█ Second, and more fundamentally, "it is well-established that litigants cannot confer [subject matter] jurisdiction by consent where none exists." *United States v. Judge,* 944 F.2d 523, 525 (9th Cir.), *cert. denied,* 504 U.S. 927, 112 S.Ct. 1988, 118 L.Ed.2d 585 (1992). To be blunt about it, Congress has explicitly provided that these criminal contempt proceedings must be conducted by district judges upon certifications from magistrate judges. Congress has not given magistrate judges that jurisdiction and no one— not the parties, not the district court, not this court—can confer that jurisdiction upon them. We think that is apodictic.

Nor are we dissuaded from this conclusion by the fact that pursuant to § 636(a)(3)–(4) magistrate judges can hear misdemeanor cases by consent. That authority is pursuant to an express grant of power from Congress, whereas Congress expressly withdrew the power to hear criminal contempt matters from magistrate judges.

Neither are we dissuaded by the fact that district judges can, with the consent of the parties, designate magistrate judges to hear voir dire in felony criminal trials. *See Peretz v. United States,* 501 U.S. 923, 935, 111 S.Ct. 2661, 2668, 115 L.Ed.2d 808 (1991). That is based upon an interpretation of § 636(b)(3) and does not undercut the district judge's "'total control and jurisdiction'" over the process. *Id.* at 937, 111 S.Ct. at 2669–70 (citation omitted); *see also Judge,* 944 F.2d at 525. Again, that is a far cry from holding that a magistrate judge can undertake the exercise of an authority which Congress has expressly withheld.

Moreover, criminal contempt proceedings are not the same as simple misdemeanor prosecutions or the conduct of voir dire in felony trials. Contempt proceedings implicate the authority, the discretion, and the dignity of Article III courts. They constitute "the ultimate exercise of judicial power...." *Geras,* 742 F.2d at 1044. Congress has carefully avoided conferring that power upon magistrate judges. The mere fact that some analogies can be drawn between contempt proceedings and criminal proceedings does not mean that we should guard use of the contempt power any less jealously than Congress did.

## CONCLUSION

We hold that § 636(e) means what it says. When a magistrate judge is faced with a criminal contempt, he must certify the facts to a district judge for decision. The magistrate judge has no jurisdiction to decide the question himself.[1] We need not decide whether Congress could constitutionally provide otherwise. It has not done so.

Therefore, we vacate the magistrate judge's contempt order and remand for further proceedings in which the magistrate judge may certify the facts to a district court judge.

**VACATED and REMANDED.**

---

1. We have throughout this opinion limited ourselves to criminal contempt orders. We have done so because that is what is before us. Nothing we have said should be taken to be an adumbration of our views regarding the jurisdiction of magistrate judges in civil contempt proceedings.