Kathleen R. IRWIN, an individual; Nancy Heth, an individual; Lorraine L. Castaneda, an individual on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Owen T. MASCOTT, an individual; Commonwealth Equity Adjustments, Inc., a California corporation; Eric W. Browning, an individual, Defendants–Appellants,

and

Robert Hyde, Appellant.

No. 02–16543.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2003.

Filed June 4, 2004.

Mark E. Ellis and June D. Coleman, Murphy Pearson Bradley & Feeney, Sacramento, CA, for the appellants.

Paul Arons, Redding, California, O. Randolph Bragg, Horowitz Horowitz & Associates, Chicago, IL, Lorraine Ellen Baur, Ukiah, CA, for the appellees.

Before: CANBY, W. FLETCHER, and TALLMAN, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge.

Plaintiffs are a class of California residents who received debt collection letters from defendant Commonwealth Equity Adjustments, Inc. ("Commonwealth"), a debt collection agency. The class action complaint alleged that the content and delivery method of Commonwealth's collection letters violated federal and state law. The parties consented to proceed to judgment before a magistrate judge, who found for the plaintiff class and issued a permanent injunction against Commonwealth and its agents and affiliates. Commonwealth, Eric Browning, its president, and Robert Hyde, a non-party corporate officer of Commonwealth, were subsequently found in contempt for violating the injunction and sanctioned by the magistrate judge. Commonwealth, Browning, and Hyde appeal the finding of contempt and the sanctions, claiming that they "substantially complied" with the injunction. Hyde asserts, in addition, that the magistrate judge lacked jurisdiction over him. We disagree with both contentions and affirm the magistrate judge in all respects.

I. Background

Commonwealth is a debt collection agency located in California. It sends automated debt collection notices to persons who "bounce" checks made payable to retail stores. Plaintiffs are a class of California residents who received form debt collection letters from Commonwealth. The class action complaint alleged that Commonwealth's form letters did not conform to the requirements of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and California Civil Code § 1719. The parties consented to proceed before a magistrate judge for all purposes, see 28 U.S.C. § 636(c), and the plaintiff class was certified.

Following extensive discovery and a motion for partial summary judgment, the magistrate judge found that defendants had blatantly violated explicit provisions of the FDCPA and California Civil Code § 1719. Irwin v. Mascott, 112 F.Supp.2d 937 (N.D.Cal.2000). The FDCPA prohibits, inter alia, the "threat to take any action ... that is not intended to be taken." 15 U.S.C. § 1692e(5). Many of Commonwealth's form letters included a threat that Commonwealth would bring suit against the debtor. Indeed, many letters included a sample complaint. With respect to the vast majority of debts for which it sent letters, however, Commonwealth violated § 1692e(5) because it did not truly intend to sue the debtors. California Civil Code § 1719(a) permits a creditor to collect (1) a service charge of $25 and (2) treble the amount of the bounced check if the creditor sends the debtor a certified letter giving him or her thirty days to pay the amount due. If the debtor pays the amount of the check within thirty days, he or she must also pay the service charge and the cost of mailing the certified letter, but is not liable for treble damages. These are the only remedies available to a creditor when a California resident bounces a check. Id. § 1719(h). Commonwealth violated § 1719 by mailing letters by ordinary mail that immediately demanded treble damages, interest, and an

amount greater than the cost of postage as the cost of mailing.

The magistrate judge granted partial summary judgment to the plaintiff class and permanently enjoined Commonwealth, "its subsidiaries, principals, officers, agents, employees, successors, and assigns" from sending unlawful collection letters (the "Injunction"). Commonwealth changed some of its practices in response to the Injunction, but also continued to violate it in several ways. In late 2000, the plaintiff class moved for a finding that defendants had violated the Injunction and consequently were in contempt, and requested prospective remedies in anticipation of further violations. Defendants argued that they had "substantially complied" with the Injunction, but the magistrate judge found otherwise. *See General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986) ("substantial compliance is a defense to an action in civil contempt").

The magistrate judge declined to punish defendants for their past transgressions but, rather, gave them one last chance to comply with the Injunction. Accordingly, he entered an order (the "Prospective Order") advising defendants that certain specific practices violated the Injunction, ordering them to distribute a copy of the Injunction to all Commonwealth employees, and specifically providing that any future violations of the Injunction would lead to a sanction of $10,000 to be paid to the plaintiff class for each version of offending letter that had been sent. Defendants did not appeal the Prospective Order, and the parties subsequently settled the class action. Because of the settlement, an appeal of the underlying Injunction was withdrawn. The settlement provided that defendants were obliged to continue to obey the Injunction, and that plaintiffs were authorized to enforce it.

Despite the provision in the Prospective Order stating that further noncompliance would result in monetary sanctions, Commonwealth continued to send demand letters that violated the Injunction. In addition, when one class member refused to pay the unlawful extra charges demanded by Commonwealth, it reported the unpaid charges to a credit reporting agency. In early 2002, plaintiffs moved for contempt sanctions. This motion was brought against Commonwealth, defendant Browning, and non-party Hyde.

Hyde, though not a party, was Commonwealth's vice president of operations. He was the primary officer charged with overseeing the content and mailing methods of its collection letters. He was also intimately involved with the class action litigation. He submitted two declarations to the magistrate judge in opposition to plaintiffs' motion that led to the Prospective Order, submitted a declaration in opposition to plaintiffs' subsequent motion for contempt sanctions, and sat for two depositions. Apart from Browning, Hyde was the only Commonwealth employee who submitted a declaration in opposition to plaintiffs' motions for sanctions and prospective relief.

In his declarations, Hyde stated that he had worked for Commonwealth since 1996 and had received notice of the Injunction. He also signed an "Acknowledgment of Receipt" form indicating that he had received a copy of the Injunction and the FDCPA. In his declarations, Hyde described, in detail, the modifications and revisions he had made to Commonwealth's form demand letters in response to the Injunction, and stated that he had instructed all of Commonwealth's debt collectors to comply with the Injunction. He also stated that he was personally responsible

for checking the amounts demanded on the approximately twenty non-mass-mailed letters sent each day.

After hearing oral argument, the magistrate judge found Commonwealth, Browning, and Hyde to be in contempt of the Injunction and the Prospective Order, and ordered them to pay $10,000, costs, and attorneys' fees to the plaintiff class. Defendants and Hyde appeal, asserting that they had substantially complied with the magistrate judge's orders. Hyde also appeals on the separate ground that the magistrate judge lacked jurisdiction over him.

## II. Discussion

### A. Jurisdiction Over Hyde

■ We first decide whether the magistrate judge had jurisdiction over Hyde. Before a magistrate judge can adjudicate a civil action such as the one before us, the parties must consent to his or her exercise of jurisdiction. 28 U.S.C. § 636(c); *see In re Marriage of Nasca,* 160 F.3d 578, 579 (9th Cir.1998) (parties' consent must be "explicit, clear and unambiguous"). We review de novo the issue of whether the magistrate judge had jurisdiction over Hyde. *See, e.g., United States v. Real Prop.,* 135 F.3d 1312, 1314 (9th Cir. 1998) (whether magistrate judge has jurisdiction to enter default judgment in civil forfeiture action is reviewed de novo); *Bingman v. Ward,* 100 F.3d 653, 656 (9th Cir.1996) (whether magistrate judge has jurisdiction to impose criminal contempt sanction is reviewed de novo). The question in this case is whether, in the absence of his own explicit consent, Hyde may nonetheless be deemed to have consented to the exercise of jurisdiction by the magistrate judge.

■ A non-party can be bound by the litigation choices made by his virtual representative. For example,"[t]his Circuit has held that when two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other." *Nordhorn v. Ladish Co., Inc.,* 9 F.3d 1402, 1405 (9th Cir.1993) (citing, *inter alia, In re Dominelli,* 820 F.2d 313 (9th Cir.1987), and *United States v. ITT Rayonier, Inc.,* 627 F.2d 996 (9th Cir.1980)); *see also United States v. Geophysical Corp. of Alaska,* 732 F.2d 693, 697 (9th Cir.1984) ("A person technically not a party to the prior action may be bound by the prior decision if his interests are so similar to a party's that that party was his 'virtual representative' in the prior action.") (quoting *ITT Rayonier,* 627 F.2d at 1003). A finding of virtual representation is typically based on the confluence of several factors.

■ A close relationship between the named party and the nonparty supports a finding of virtual representation. *See Trevino v. Gates,* 99 F.3d 911, 924 (9th Cir. 1996) (grandmother-granddaughter relationship found to be "sufficient in this case"); *ITT Rayonier,* 627 F.2d at 1003 (Washington State Department of Ecology and Environmental Protection Agency); *see also In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir.1983) (finding "privity" between corporation and its sole and controlling shareholder). An identity of relevant interests between the named party and the non-party is necessary to such a finding. *See Trevino,* 99 F.3d at 924 (finding virtual representation where the interests of the named party and non-party were "identical"); *Shaw v. Hahn,* 56 F.3d 1128, 1132 (9th Cir.1995) (holding that a "litigant raising a *Batson* objection [ ] shares a sufficient commonality of interest with the [excluded] venireperson to act as her 'virtual representative' for purposes of litigating her equal protection claim"); *see also Got-*

*theiner,* 703 F.2d at 1140 ("When a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest [to support a finding of privity].") (citing *Sparks Nugget, Inc. v. Commissioner of Internal Revenue,* 458 F.2d 631, 639 (9th Cir.1972)); *cf. Cunningham v. Gates,* 312 F.3d 1148, 1155–56 (2002) (refusing to find virtual representation where it appeared that the interests of the named party and non-party might have "sharply diverged") (applying California law). *But cf. Green v. City of Tucson,* 255 F.3d 1086, 1101 (9th Cir.2001) (en banc) (noting that "the mere fact that a litigant in another case represented 'essentially identical' interests to those of the plaintiff [cannot] pose a bar to a separate plaintiff pursuing his own cause of action") (citing, *inter alia, Richards v. Jefferson County,* 517 U.S. 793, 796, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996)).

■ Substantial participation or control by the non-party in the named party's suit weighs heavily in favor of a finding of virtual representation. *See ITT Rayonier,* 627 F.2d at 1003 ("One who is not a party of record may be bound if he had a sufficient interest and *participated* in the prior action.") (citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)) (emphasis added); *cf. Nordhorn,* 9 F.3d at 1405 (refusing to find virtual representation where non-party "had no participation in or control over" the prior suit). Earlier tactical maneuvering by the named party will support a finding of virtual representation of closely-aligned non-parties. *See Pedrina v. Chun,* 97 F.3d 1296, 1301–02 (9th Cir.1996) (where most of the federal plaintiffs had been unsuccessful parties in two prior state court actions over same dispute, primarily or state plaintiffs held to be virtual representatives of the newly-added plaintiffs).

■ Finally, adequate representation by the named party is a pre-requisite to a finding of virtual representation. *See Pedrina,* 97 F.3d at 1302 ("[P]rivity," which includes the concept of virtual representation, "will be found only where the interests of the non-party were adequately represented in the earlier action[.]") (citing *Hansberry v. Lee,* 311 U.S. 32, 44–45, 61 S.Ct. 115, 85 L.Ed. 22 (1940)); *see also ITT Rayonier,* 627 F.2d at 1003 (finding virtual representation where the non-party "does not contend that [the virtual representative] failed to assert vigorously its position" in the prior proceedings); *see generally Martin v. Wilks,* 490 U.S. 755, 762 n. 2, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) ("We have recognized an exception to the general rule [that 'everyone should have his own day in court'] when, in certain limited circumstances, a person, although not a party, has his interests *adequately represented* by someone with the same interests who is a party.") (emphasis added). In short, a close relationship, substantial participation, and tactical maneuvering all support a finding of virtual representation; identity of interests and adequate representation are necessary to such a finding.

■ On the basis of these principles, we hold that the named defendants served as Hyde's virtual representatives in this litigation, including for purposes of consent to adjudication by the magistrate judge. As he was a senior corporate officer of Commonwealth, Hyde had a close relationship with the named defendants. Specifically, Hyde was Commonwealth's primary corporate officer responsible for its form collection letters. There is no assertion that Hyde's interests diverged from that of the named defendants. Hyde was also intimately involved in this litigation in that he

submitted several key declarations and sat for two depositions. He participated fully in the underlying litigation and made no objection to the magistrate judge's jurisdiction until the plaintiff class moved to sanction him. Finally, Hyde is represented here by the same counsel that appeared before the magistrate judge on behalf of the named defendants, and he makes no claim that the named defendants' representation of his interests was anything but adequate. We hold that the named parties served as Hyde's virtual representatives for purposes of consenting to the magistrate judge's jurisdiction. When the named parties consented to be bound by the orders of the magistrate judge, they spoke for Hyde as well. The magistrate judge therefore had jurisdiction over Hyde just as if he had consented himself.

### B. Contempt Order

■■■ We review a civil contempt order for abuse of discretion. *SEC v. Hickey,* 322 F.3d 1123, 1128 (9th Cir.), *amended by* 335 F.3d 834 (9th Cir.2003). We will not reverse the finding of contempt unless we have "a definite and firm conviction that the [magistrate judge] committed a clear error of judgment after weighing the relevant factors." *Go Video, Inc. v. Motion Picture Ass'n of Am.,* 10 F.3d 693, 695 (9th Cir.1993). The magistrate judge's underlying factual findings are reviewed for clear error. *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir.1999).

■■■ Commonwealth, Browning, and Hyde appeal the magistrate judge's finding that they violated the Injunction. Before considering their contention, however, it is important to note that we do not reconsider the merits of the underlying unappealed Injunction. In *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the Supreme Court held that a person subject to an injunction must ordinarily obey it. Any challenge to an injunction with which one disagrees should be made through the usual processes of law, such as an appeal. *Id.* at 320–21, 87 S.Ct. 1824. One may contest the underlying lawfulness of an injunction by disobeying it only in fairly narrow circumstances, such as when the order was "transparently invalid or had only a frivolous pretense to validity," *id.* at 315, 87 S.Ct. 1824, or if there has been a judicial declaration of its unconstitutionality in other proceedings. *Id.* at 320, 87 S.Ct. 1824. When a party does not appeal an injunction and is later held in contempt for violating that same injunction, he may not challenge the merits of the underlying injunction in a contempt proceeding, subject only to the exceptions noted in *Walker. Sidney v. Zah,* 718 F.2d 1453, 1457–58 (9th Cir.1983). Here, Commonwealth and Browning declined to appeal the Injunction. Because they do not come within any of the exceptions, they may not challenge the legality of the Injunction in this contempt proceeding.

■■■ Hyde protests that it is unfair to preclude a non-party from challenging the Injunction in a contempt proceeding. Federal Rule of Civil Procedure 71, however, grants to the district courts the power to enforce orders against "a person who is not a party ... as if a party." Hence, when an injunction is addressed to a nonparty and he is given notice of the injunction, Rule 71 permits a district court to use "the same processes for enforcing obedience to the order as if[he were] a party," such as holding him in contempt for violating it. *Cf. Peterson v. Highland Music, Inc.,* 140 F.3d 1313, 1323 (9th Cir.1998) (a non-party may properly be held in contempt if he is given notice of the court's order and either abets the defendant in violating the order or is legally identified with him). Here, the Injunction stated on

its face that it applied to Commonwealth's "principals, officers, agents,[and] employees," which obviously includes Hyde, its vice president of operations. Because Hyde received a copy of the Injunction, which states on its face that it applied to him, he was on notice of its terms. He did not move to intervene or otherwise attack the Injunction when it issued, and he may not now challenge its legality in a contempt proceeding arising out of its violation. *See Walker,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210.

 We hold that the magistrate judge did not clearly err in finding, on the basis of clear and convincing evidence, that Commonwealth, Browning, and Hyde willfully disobeyed the Injunction. *Go–Video,* 10 F.3d at 695 (requiring "clear and convincing" evidence that a contemnor violated a court order); *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1146 (9th Cir.1983) (requiring willful disobedience of a court order to support a finding of civil contempt). While a court has discretion to excuse minor, technical, or good faith violations of an injunction, *see, e.g., Go–Video,* 10 F.3d at 695, it likewise has discretion to punish substantial violations when appropriate.

Here, the evidence clearly established that Commonwealth, Browning, and Hyde violated the Injunction. For example, plaintiffs introduced a form letter sent from Commonwealth to Tiffany R. Caine. This letter stated that the "Check Amount" was "$0.00," yet demanded "$186.00." There can be no doubt that this letter violated the Injunction, which enjoined Commonwealth and its officers from, *inter alia,* "[s]ending [any] collection letters which do not include the face amount of the check." Indeed, defendants and Hyde admit in their brief to this court that the letter sent to Caine "contains violations of the court order in that it misstates the check amount, the treble damages, and the total due." The record is clear that, throughout this litigation, Commonwealth, Browning, and Hyde had not engaged in a good faith effort to substantially comply with the Injunction. Rather, as was apparent to the magistrate judge, they resisted the court's authority for as long as they could get away with it. The magistrate judge did not abuse his discretion in holding Commonwealth, Browning, and Hyde in contempt.

AFFIRMED.