**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AVRIL ADAMS,
            *Plaintiff-Appellant,*

            v.

STATE OF CALIFORNIA
DEPARTMENT OF HEALTH SERVICES,
a public entity; DONNATA
MORELAND; OAKTREE
INVESTIGATIONS, a business entity
and consumer reporting agency;
LAURENCE A. CORBIN, individually
as an investigator for Oak Tree
Investigations; PATRICA ECHARD;
LETTE BAKER; PATRICK KENNELLY,
individually and as a supervisor;
LAVONNE COEN,
            *Defendants-Appellees.*

No. 04-56880

D.C. No.
CV-04-07313-GAF

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Submitted December 5, 2006*
Pasadena, California

Filed February 13, 2007

Before: Harry Pregerson, David R. Thompson, and
Richard C. Tallman, Circuit Judges.

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

Opinion by Judge Thompson

**COUNSEL**

B. Kwaku Duren, Los Angeles, California, for the appellant.

Martin H. Milas, Deputy Attorney General, Los Angeles, California, for the appellees.

**OPINION**

THOMPSON, Senior Circuit Judge:

Appellant Avril Adams appeals the district court's dismissal with prejudice of her complaint against Appellees the California Department of Health Services ("CDHS"); CDHS employees Donnata Moreland, La Vonne Coen, Patricia Echard, Paulette Baker, and Patrick Kennelly; and Oaktree Investigations and its employee, Laurence Corbin. We have jurisdiction under 28 USCA § 1291, and we affirm the district court's dismissal of Adams's complaint.

## I.  BACKGROUND

In January 2001, Adams applied for a food and drug inspector ("FDI") position with CDHS. Food and drug inspectors are peace officers and carry firearms, investigate violations, make arrests, and travel to food storage, processing facilities and farms. Adams was offered the position she sought, but her actual hiring was conditioned upon her successful completion of a background investigation, including medical and psychological evaluations.

Adams passed the psychological evaluation, but Dr. Stephen G. Weyers notified her that he had recommended restrictions on her ability to perform activities that required maximal exertion and balance. CDHS then advised Adams it was unable to accommodate her medical restrictions and it withdrew the conditional job offer. Thereafter, Adams took a new treadmill stress test, and Dr. Weyers medically approved her without limitation for the food and drug investigator position.

CDHS then withdrew its medical disqualification of Adams and notified her it would resume her selection process. Adams objected to further investigation. Thereafter, CDHS notified her that it rescinded its conditional offer of employment. Four days later, the State Personnel Board ("SPB") ruled on Adams's appeal of Dr. Weyers's decision to disqualify her for medical reasons. Because Dr. Weyers subsequently approved her, SPB granted Adams's appeal and advised her she would be appointed to the FDI position within 120 days unless she was unsuccessful in the balance of the selection process.

On April 1, 2003, Adams filed a petition for rehearing with the SPB. CDHS filed a response to Adams's petition, stating that it withdrew Adams's conditional offer of employment the second time because, during the completion of the investigation process, questions arose regarding Adams's suitability as a peace officer. The response detailed Adams's behavior during the selection process, which included challenging a CDHS employee to a race during the SPB hearing, making numerous phone calls, and sending emails and letters to CDHS employees in which Adams's tone was "rude," "discourteous," "abrupt," "angry," and "challenging in a demeaning way." The response concluded that Adams did not possess the interpersonal skills, sound judgment, or the ability to follow directions necessary for being an effective peace officer. The SPB denied Adams's petition for rehearing on June 17, 2003.

Adams filed a complaint in state court on November 10, 2003, naming CDHS, Coen, Moreland, and Dr. Weyers as

defendants. Adams asserted claims for (1) retaliation in violation of 42 USCA § 1983; (2) violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the California Fair Employment and Housing Act, Cal. Gov't Code § 12900 *et seq.*; (3) denial of due process and civil rights in violation of 42 USCA §§ 1981, 1983, 1985; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) negligence; and (7) declaratory relief. Adams sought damages and a declaration from the court that CDHS's withdrawal of the conditional offer of employment was unlawful.

Adams's complaint also detailed the facts behind the reopening of the background investigation to support her claims for negligence, violations of 42 USCA §§ 198142 U.S.C. §§ 1981, 1983, 1985, breach of contract, and declaratory relief. In her complaint, Adams did not allege separate claims under the Fair Credit Reporting Act ("FCRA"), 15 USCA § 1681 *et seq.*, or state privacy law, although she alleged that the act of resuming the background investigation was prejudicial, illegal, unreasonable, discriminatory, retaliatory, and arguably illegal in violation of the FCRA and due process.

Adams's action was removed to federal court on December 8, 2003. *Adams v. Cal. Dep't of Health Servs.*, No. CV-03-8920 (C.D. Cal. filed Dec. 8, 2003). The district court issued a scheduling order setting March 26, 2004, as the deadline for filing motions to amend the complaint or add additional parties.

On July 1, 2004, well past the March 26, 2004 deadline set in the scheduling order, Adams filed a motion for leave to amend her complaint. Adams wanted to add as defendants Oaktree Investigations and Oaktree investigator Corbin, as well as CDHS employees Echard, Baker, and Kennelly. In her proposed amended complaint she alleged four additional claims: (1) violation of the FCRA; (2) violation of the California Investigative Consumer Reporting Agencies Act

("ICRA"), CA CIVIL § 1786 *et seq.*; (3) infringement of her civil and constitutional rights in violation of 42 USCA §§ 198142 U.S.C. §§ 1981, 1983, 1985; and (4) declaratory relief.

Finding that Adams failed to demonstrate good cause for the undue delay in seeking leave to amend, and that granting her motion to amend would prejudice the defendants already named in her complaint, the district court denied Adams's motion as untimely. The action then proceeded to trial and a jury found in favor of the defendants. Adams appealed the denial of her motion for leave to amend, among other issues, to our court. In a memorandum disposition filed February 7, 2007, we have affirmed the district court's decisions and the judgment in that first case. *Adams v. State of Cal.Dep't of Health Servs.*, No. 05-56857 (9th Cir. filed February 7, 2007).

On September 2, 2004, after the district court denied her motion for leave to amend in the first case, Adams filed the complaint in this present case. In her complaint in this case, Adams set forth the four additional claims she had sought to add by her previously denied motion for leave to amend her complaint in the first case. In the present case, the district court determined that Adams's newly filed complaint was duplicative of the complaint she had previously filed in the other case, and the court dismissed the new complaint with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

District courts retain broad discretion to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, default or dismissal." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962). We review for abuse of discretion the district court's dismissal of Adams's complaint. A district court has discretion to dismiss a later-filed action, to

stay that action pending resolution of the previously filed action, or to consolidate both actions. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000); *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (en banc) (*cited with approval in Russ v. Standard Ins. Co.*, 120 F.3d 988, 990 (9th Cir. 1997)).

## III.   DISCUSSION

**[1]** The rule against duplicative litigation is distinct from, but closely related to, the doctrine of claim preclusion, and the two doctrines serve many of the same policies. Dismissal of a duplicative lawsuit, like claim preclusion (sometimes referred to as *res judicata*) serves judicial economy and the "comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). Moreover, dismissal of a duplicative suit protects the parties from vexatious and expensive litigation and serves the societal interest in bringing an end to disputes. *Cf. Allen v. McCurry*, 449 U.S. 90, 94 (1980) (*res judicata* relieves parties of cost of multiple lawsuits, conserves judicial resources, and encourages reliance on adjudication); *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (*res judicata* "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes"); 18 Moore's Federal Practice ¶ 131.12 (3d ed. 1999).

Dismissal of a duplicative suit is an appropriate remedy because plaintiffs have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Walton*, 563 F.2d at 70; *see also Curtis*, 226 F.3d at 138-39; *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985); *Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980); *Sutcliffe Storage & Warehouse Co. v. United States*, 162 F.2d 849, 851 (1st Cir. 1947).

**[2]** The test for whether a suit is duplicative and subject to dismissal is substantially equivalent to the test for claim pre-

clusion. As the Supreme Court stated in *United States v. The Haytian Republic*, "the true test of the sufficiency of a plea of 'other suit pending' in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit." 154 U.S. 118, 124 (1894). The doctrine of claim preclusion bars " 'all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action, if the prior suit concluded in a final judgment on the merits.' " *Int'l Union of Operating Eng'rs-Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993) (alteration in original) (quoting *Ross v. Int'l Bhd. of Elec. Workers*, 634 F.2d 453, 457 (9th Cir. 1980)); *see also Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).

**[3]** Thus, to determine whether the district court abused its discretion in dismissing Adams's present complaint with prejudice because it was duplicative of her first complaint, we assess what claim preclusive effect the judgment on the merits in her first action would have on the present action.

## A. Same Cause of Action

**[4]** We examine first whether the claims in Adams's present action were based on the same claims asserted in her first action. In determining whether successive claims are the same, we consider four criteria:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982). "The last of these criteria is the most important." *Id.* at 1202.

**[5]** We use a transaction test to determine whether the two suits share a common nucleus of facts. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (citing Restatement (Second) Judgments § 24(1) (1982)).

**[6]** Here, it is clear that the two actions share a common transactional nucleus of facts. The first complaint detailed the factual allegations surrounding the reopening of Adams's background investigation and used those allegations to support claims under the legal theories of negligence, violations of 42 USCA §§ 198142 U.S.C. §§ 1981, 1983, 1985, breach of contract, and declaratory relief. Adams's first complaint specifically cited as support for her claims against Coen, Moreland, and Dr. Weyers under 42 USCA §§ 198142 U.S.C. §§ 1981, 1983, 1985, the same negative comments from CDHS employees during the selection process that she used to support her claims in the present action. The present complaint differs only in that it identifies the CDHS employees who made the negative comments, names those CDHS employees and Corbin and Oaktree Investigations as defendants, and advances two new legal theories of recovery under the FCRA and the ICRA. The two other claims — one under 42 U.S.C. §§ 1981, 1983, 1985 and one seeking declaratory relief — are identical to those asserted in the first complaint. As Adams herself concedes, the claims in both complaints relate to the same set of facts and form a convenient trial unit because they "disclose[ ] a cohesive narrative" of Adams's relationship with CDHS and the disputed withdrawal of the conditional job offer after the continuation of the background investigation. *Mpoyo*, 430 F.3d at 987.

**[7]** That the additional legal theories of recovery under the FCRA and ICRA were not raised as separate claims in Adams's first complaint does not by itself permit her to present those claims in a subsequent complaint, because a litigant "is not permitted to fragment a single cause of action and to litigate piecemeal the issues which could have been resolved in one action." *Flynn v. State Bd. of Chiropractic Examiners*, 418 F.2d 668, 668 (9th Cir. 1969) (per curiam). "Res judicata [or claim preclusion] prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown*, 442 U.S. at 131. Adams "cannot avoid the bar of res judicata merely by alleging conduct by the defendant not alleged in [her] prior action or by pleading a new legal theory." *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986).

**[8]** It is clear that the FCRA and ICRA theories of recovery were available to Adams in the first action because Adams obtained the report on the reopened background investigation from the discovery materials provided by CDHS prior to the deadline set for filing a motion to amend the complaint. Adams admits that she obtained this report on January 17, 2004, more than two months prior to the deadline for amending the complaint. Moreover, Adams herself posited in the first complaint that the reopening of the background investigation was "arguably illegal based upon the Fair Credit Reporting Act." Therefore, the principle that "[c]laim preclusion bars the assertion of any theory of recovery that could have been asserted in the first action," *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992), applies with particular force here.

**[9]** In addition, any judgment in the present action necessarily could destroy or impair rights and interests established by the judgment in the first action. As Adams alleges in her present complaint, both the FCRA and the ICRA require consent to and disclosure of an investigation. *See* 15 U.S.C.

§ 1681b(b); Cal. Civil Code §§ 1786.10-.12. However, the central issues raised in the present complaint surrounding the legality of the reopening of Adams's background investigation — whether the selection process was complete after Adams was medically cleared, whether CDHS lost the right to resume the background investigation when it rescinded for the first time Adams's conditional offer of employment, or whether the background investigation had never been completed and Adams's consent to the investigation remained valid — were squarely raised and argued by Adams in her claim for declaratory relief in the first complaint.

Furthermore, although Adams argues that the additional report she uncovered on January 17, 2004, containing the affidavits from Kennelly, Echard, and Baker, is new evidence, the additional evidentiary detail surrounding Echard's and Baker's comments "is scarcely enough to establish that the instant lawsuit arises out of a different 'transactional nucleus of facts' than that which generated the [first] suit." *Constantini*, 681 F.2d at 1202. "The fact that some different evidence may be presented in this action . . . does not defeat the bar of res judicata." *Karr*, 994 F.2d at 1430.

Significantly, the key evidence presented during trial in the first action regarding Adams's claim of retaliation was the testimony of CDHS employees Moreland and Coen regarding Adams's behavior during the selection process. In addition, Kennelly, Echard, Baker and Corbin all submitted declarations in the first action regarding the information gathered during the reopened background investigation in support of CDHS's motion for summary judgment. As the district court stated in its order denying Adams's motion for a new trial in the first action, "[t]his case largely turned on the jury's assessment of the credibility of the defendants, who explained why they determined not to finalize their conditional offer of employment to [Adams]."

Finally, although the FCRA and the ICRA establish distinct rights enforceable by litigants, this factor alone does not

defeat the preclusive effect of the first action. *See Derish v. San Mateo-Burlingame Bd. of Realtors*, 724 F.2d 1347, 1349 (9th Cir. 1983), *overruling on other grounds recognized by Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1437 (9th Cir. 1985). Indeed, we have applied the doctrine of claim preclusion on the ground that two claims arose out of the same transaction, without relying upon other factors. *See, e.g., Karr*, 994 F.2d at 1430-31; *Ulloa*, 958 F.2d at 871; *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987).

**[10]** It is clear that the claims in Adams's present complaint arise out of the same transactional nucleus of facts asserted in her first action and that rights established by the judgment in the first action could be destroyed or impaired by a judgment in the present action. It is also plain that substantially the same evidence was and would be presented in both actions.

*B.   Final Judgment on the Merits*

**[11]** Although the district court's order denying as untimely Adams's motion to amend does not satisfy the claim preclusion requirement of a final judgment, the preclusive bar here is based not on the decision denying leave to amend, but rather on the transactional nucleus of the facts underlying the claims asserted in the two actions, and the requirement that a plaintiff must bring at one time all claims against a defendant relating to the same transaction or event. *See N. Assur. Co. of Am. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000); *Nilsen v. City of Moss Point*, 701 F.2d 556, 564 (5th Cir. 1983) (en banc); Restatement (Second) of Judgments § 25, cmt. b (1982) ("It is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late."). As the Third Circuit stated, " 'the fact that the plaintiff was denied leave to amend does not give h[er] the right to file a second lawsuit based on the same facts.' " *Huck*

*v. Sea Air Shuttle Corp.*, 106 F.3d 45, 50 (3d Cir. 1997) (quoting *Sendi v. NCR Comten, Inc.*, 624 F. Supp. 1205, 1207 (E.D. Pa. 1986)).

## C. Same Parties or Privies

**[12]** While Adams's present complaint names five additional defendants, the privity requirement of claim preclusion is satisfied because these defendants were "virtually represented" by the defendants in the first action. Although the concept of privity traditionally applied to a narrow class of relationships in which "a person [is] so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved," we have *419 F.3d 989* expanded the concept to include a broader array of relationships which fit under the title of "virtual representation." *Kourtis v. Cameron*, 419 F.3d 989, 996 (9th Cir. 2005) (internal quotation marks omitted). The necessary elements of virtual representation are an identity of interests and adequate representation. *419 F.3d 989Id.* Additional features of a virtual representation relationship include " 'a close relationship, substantial participation, and tactical maneuvering.' " *Id.* (quoting *Irwin v. Mascott, 370 F.3d 924, 930 (9th Cir. 2004))*.

**[13]** Here, three of the new defendants — Patricia Echard, Paulette Baker, and Patrick Kennelly — were employees of CDHS at the time of the events described in both of Adams's complaints and had a close relationship with the defendants named in the first complaint. *See Irwin*, 370 F.3d at 930-31 (finding senior corporate officer virtually represented by his corporation). In addition, all three participated in the first action by submitting in support of CDHS's motion for summary judgment declarations regarding their participation in Adams's background investigation. Moreover, their interests were identical to those of the defendants in the first action.

**[14]** Furthermore, although the last two new defendants, Laurence Corbin and Oaktree Investigations, were not

employees of CDHS, they maintained a close relationship with CDHS as agents hired to conduct the background investigation and possessed an identity of interest with CDHS. Corbin and Oaktree Investigations also participated in the first action by submitting declarations in support of CDHS's motion for summary judgment.

**[15]** Finally, CDHS and the other defendants named in the first complaint adequately represented the five new defendants named in the present action by consistently maintaining that both the reopening of the background investigation and the withdrawal of Adams's job offer were legal and proper under the circumstances. *Cf. Kourtis*, 419 F.3d at 998 (concluding no virtual representation existed where an agency relationship existed, but the interests of the parties were adverse).

## D.  Full and Fair Opportunity to Litigate

**[16]** Adams filed her present complaint in an attempt to avoid the consequences of her own delay and to circumvent the district court's denial of her motion for leave to amend her first complaint. Application of claim preclusion to dismiss Adams's present complaint does not unfairly deprive Adams of her day in court because Adams had a full and fair opportunity to raise and litigate in her first action the claims she now asserts in this action. *Cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979) ("[T]he requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." (internal quotation marks omitted)); *Ross*, 634 F.2d at 458 ("The question [before applying res judicata to bar the second suit] is . . . whether [plaintiff] had a fair opportunity to litigate that claim before a competent court prior to bringing it to the court below.").

## CONCLUSION

**[17]** The district court did not abuse its discretion by dismissing with prejudice the duplicative complaint Adams filed in this case.

**AFFIRMED**.