**Tatyana McFADDEN, Plaintiff**

**v.**

**Nancy S. GRASMICK, et al., Defendants.**

**Civil No. AMD 07–719.**

United States District Court, D. Maryland.

May 12, 2007.

Lauren Young, Luciene M. Parsley, Maryland Disability Law Center, Baltimore, MD, for Plaintiff.

Elizabeth Mary Kameen, Elliott L. Schoen, State of Maryland, Office of the Attorney General, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION and ORDER

DAVIS, District Judge.

Plaintiff, Tatyana McFadden,[1] instituted this action pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794,[2] Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.,[3] and 42 U.S.C. § 1983, seeking declaratory and injunctive relief in respect to the manner in which defendants, state educational officials and their agents and designees, operate the statewide system of track and field competition in Maryland. On May 9, 2007, the court conducted a hearing on plaintiff's motion for a preliminary injunction. For the reasons set forth within, plaintiff's motion for a preliminary injunction shall be denied.

1. Plaintiff filed suit by her mother as next friend, but the record shows that she is 18 years old.

2. Section 794(a) provides in pertinent part:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance

29 U.S.C. § 794(a).

3. Section 12132 of Title 42 of the United States Code provides:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

## I.

McFadden's claim is a singular one: she contends that, as described herein, defendants unlawfully discriminate against her, as a student-athlete who uses a wheelchair, because their rules and protocols for assigning team points in statewide track and field competition precludes her from earning points for her team.

McFadden is a junior at Atholton High School ("AHS") in Howard County. McFadden has spina bifida and has been paralyzed from below her waist since early childhood. As a result of walking on her hands to get around, she developed strength in her upper body. She now uses a wheelchair for mobility and by all accounts is a highly skilled, indeed, "world class" and Olympic, wheelchair racer ("a wheeler"), competing in several events. Plaintiff is eligible for the interscholastic athletic program and is a full member of the AHS track team.[4]

AHS is a member of defendant Maryland Public Secondary Schools Athletic Association ("MPSSAA") and competes in statewide track and field tournaments as a class 2A school. MPSSAA sets standards for competition to which all public schools must adhere in order to engage in interscholastic athletics.

Between 2005 and the present, defendant MPSSAA, acting through its Executive Director, defendant Edward Sparks, has moved somewhat fitfully toward full integration of wheelchair racers in interscholastic track and field competitions. (For some time, wheelchair athletes have been allowed to compete in, and to earn team points in, certain field events, i.e., discus and shot put.) Plaintiff and her mother have advocated vigorously to move the evolution of that process more rapidly. Plaintiff's mother has corresponded at length with Sparks regarding the relevant rules and policies, often and understandably expressing her dissatisfaction and frustration with the slow progress that has been made.

In particular, plaintiff's mother has advocated strongly for a change in the scoring policies: (1) she asked to make a presentation to the MPSSAA; (2) she offered to bring wheelchair racing experts to meet with state officials; (3) she asked to pay the costs of training for state personnel; and (4) she offered to arrange visits with

4. In a case filed in 2006, *McFadden v. Cousin*, No. AMD 06–648 (D.Md.), McFadden sued Howard County officials under the same statutes at issue here, seeking the right to participate in races alongside non-wheelchair racers (so-called "mixed races" because, although racing at the same time, wheelers and non-wheelers do not compete against each other). After a hearing on McFadden's motion for a preliminary injunction, the court granted the motion and she has been permitted by local and state authorities in Maryland (including defendants here) to race alongside non-disabled racers. In addition, in negotiations with Howard County officials, McFadden reached agreement on how individual and team points would be awarded based on her participation in races sanctioned by the County. The instant case results from McFadden's inability to persuade state track and field offi-

cials to adopt the Howard County points system, or any other system, permitting her to earn points for her team.

Notably, in the recent case of *Badgett v. Alabama High School Athletic Asso.*, No. 2:07–CV–00572–KOB (N.D.Ala., May 3, 2007), the court had before it both of the issues presented by McFadden in the two cases she has instituted in this court: whether "mixed racing" is required by disability rights laws, and whether wheelers must be awarded team points. In *Badgett*, Judge Bowdre, in denying a motion for preliminary injunction filed by a high school wheelchair track and field athlete, concluded that defendants did not violate the ADA or the Rehabilitation Act in refusing to permit mixed racing or in refusing to award team points based on the performance of wheelchair athletes.

paralympic coaches and to provide names of persons who could be consultants.

On March 13, 2006, counsel for defendants confirmed that McFadden would be recognized as a full member of her school's team under the relevant rules and that the State Education Department was committed to eliminating barriers for student with disabilities. Specifically, the Department committed to examining its policies and eliminating barriers that exist for students with disabilities.

Pursuant to that undertaking, in the 2006 state competitions, a wheelchair race was conducted for the first time in Maryland, a 400 meter event. Defendants promoted this event as an opportunity for MPSSAA "to gain experience in wheelchair racing." McFadden participated in four track events at the 2006 regional and statewide track and field tournaments. However, McFadden's name, unlike the names of other students, was not announced as she crossed the finish line during her race events, and her name was not illuminated on the score board when she finished her races. Nor was McFadden permitted to earn points for her team in any of these races.

Following this "experiment" with wheelchair racing, the State Superintendent of Schools and the Secretary of the Department of Disabilities established a "Work Group to Review the Participation of Students with Disabilities In Athletics." After eight months, the Workgroup issued a comprehensive report, which included recommendations to the State Board of Education, designed to "move inclusion of all eligible and interested students with disabilities in athletics from a goal to a reality." In conducting its review of practices and policies concerning wheelchair track events, the Workgroup reported the results of a National Federation of High School survey:

23 of 34 state high school associations reported having no wheelchair competition in track and field;

4 of the 9 states reported having wheelchair athletes compete against one another at the state meet;

2 states reported providing events for wheelchair athletes as exhibitions;

1 state reported allowing athletes using wheelchairs to participate with non-disabled athletes in shorter events; such as the 100 and 200 and 400 meter events; and

1 state allows athletes in wheelchairs to compete with other students during the regular season, but none have met the qualifying times to enter the state meet.

Based in part on the report of the Workgroup, in February 2007, MPSSAA added 12 wheelchair racing events to the 2007 Spring Tournament, which is scheduled for late May 2007. There will be six races for boys and six for girls. Each wheeler may compete in up to four events, the same limit applicable to non-wheelers. These events will be held at the Regional Tournament from May 17 through May 20, and in the State Tournament from May 24 through May 26. The evidence marshaled by the parties suggests that two male wheelchair racers are (or may be) eligible to compete, but that McFadden, alone, is eligible to compete in the girls' races. The plan provides that all of the wheelchair races will be conducted on a statewide basis, rather than on a class basis. (In other words, the 188 secondary schools in Maryland are divided into four classes, 1A, 2A, 3A, and 4A, based on the number of students attending a school. Except in wheelchair race events, a student (and her team) competes only against students in his or her class. Wheelchair racers (there are only three in the state) compete as a

"class" without earning points for her or his team.)

It is with this background that MPSSAA decided that in order to "ensure competitive fairness and equity in team scoring, team points for wheelchair race events will not be awarded." In other words, the scoring policy, i.e., that wheelers are not eligible to earn points for their teams, remains in place from 2006. This decision prompted McFadden to file this action and to seek a preliminary injunction.

Defendants defend their decision to assign no team points based on the wheelchair races as fully consistent with MPSSAA's general policy regarding "new team events." When a "new team event" is added to state-sanctioned tournaments, the results of such an event do not earn team points in the determination of team championships until high schools representing at least 40% of the jurisdictions in a particular class participate in that event during the regular and post season (hereinafter, "the 40% Rule").

Defendants point to recent applications of the 40% Rule in respect to diving and pole vaulting competitions. As to diving, in the last few years, a handful of high schools in one class of schools added diving events to their swimming team's repertoires. However, because too few schools than those needed satisfy the 40% Rule provided competitors in diving competitions, diving competitors at schools participating in the state swimming championships did not earn points for their teams, although diving events, denominated as "exhibitions," were made a part of the statewide swimming competition. A similar application of the 40% Rule resulted when changes in high school pole vault rules resulted in a dramatic reduction in the number of schools participating in that event.

On March 28, 2007, the National Federation of High Schools (NFHS) conducted a survey regarding how wheelchair races were scored. Only two of the 23 responding states allowed team points for wheeler race results. Two other states, Iowa and Oregon, conduct wheelchair races but do not award team points in wheelchair racing events.

McFadden seeks a prohibitory injunction forbidding defendants from declining to award her "one point" for the successful completion of her events at the up-coming state competitions.

## II.

Before a preliminary injunction will issue, four factors must be evaluated: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 194–95 (4th Cir.1977). In applying the *Blackwelder* balancing test, "the irreparable harm to the plaintiff and the harm to the defendant are the two most important factors." *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir.1991).

### Harm to the Plaintiff

The first factor to consider is whether there will be irreparable harm to plaintiff if preliminary injunctive relief is not granted. That is clearly the case here. If plaintiff is not permitted to earn points for her team when she is otherwise eligible to do so, she will be a "member" of the track team, but only in "spirit." She will have been denied the opportunity to score points or, as she argues, "add value" from her contribution to the team effort, as other team members do. She practices and trains hard as does any other member. She has participated in numerous track meets during the regular season and, un-

der her county's rule, earned points for her team. Yet, defendants, as the responsible state-level officials, have not formulated a point system that would permit her to do so in this Spring's state championships, arguably the most important part of the season.

This state of affairs unequivocally imposes an intangible injury on McFadden that is real and substantial. Participation in scholastic athletic endeavors has been held to be a critical part of educational programs in civil rights cases. *Swann v. Charlotte–Mecklenburg Bd. of Ed.,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) (recognizing that segregated athletic programs and extracurricular activities were among the most important indicia of a racially segregated system); *Brenden v. Independent School Dist.,* 477 F.2d 1292 (8th Cir.1973) (recognizing that discrimination in high school interscholastic athletics is discrimination in *education* )(sex discrimination claims).[5]

*Harm to the Defendants*

Any *direct* harm to defendants from the granting of the requested injunction is indisputably minimal. Indeed, defendants' principal contention in this case is that awarding team points based on the participation of wheelchair racers is actually a desirable *goal;* defendants' difficulty is simply that they have not yet figured out how to do it in a fair and equitable manner. Unquestionably, the record shows that defendants recognize that allowing athletes who use wheelchairs to score points for their teams will contribute to defendants' important educational program objectives, e.g., building fine character and developing good citizenship skills, including those which come from exposure to, and the normalization of, differences. It is anomalous, therefore, to argue that to mandate team scoring for wheelchair racers would be harmful to defendants when in fact it is something they already contemplate.

On the other hand, the defendant officials, who are sued only in their official capacities, are also the "virtual representatives," *cf. Irwin v. Mascott,* 370 F.3d 924, 929 (9th Cir.2004); *Klugh v. United States,* 818 F.2d 294, 300 (4th Cir.1987), of the many individual, non-disabled high school track and field athletes whose opportunities to experience the "thrill" of a team victory may be unfairly diminished if care is not taken to ensure that the few teams with wheelchair athletes are not given an unwarranted advantage in the quest for team championships. Defendants emphasize that only two schools in Maryland have wheelchair racers; none other than AHS has a girl wheeler. Thus, there is the potential that if McFadden is awarded even one point (she is eligible to earn four points under her county's model) for her participation in the 2007 tournaments, her school could be named team champion, or otherwise rank higher in team standings, on a basis that is unfair to non-disabled individuals at other schools.[6] (Recall, as

---

**5.** Under regulations issued on the authority of the Rehabilitation Act, equal opportunity in athletic endeavors is an essential component of equality of opportunity in educational programs. *See* 34 C.F.R. §§ 104.37, 104.34.

**6.** McFadden's response to this argument is that not infrequently, there are several events in which not every school furnishes a participant and so such teams cannot gain points in those events. That is the nature of team events. All teams have strengths and weaknesses. As McFadden contends, even with well-established sports programs, there will be teams that do not have participants in particular events. It is an overstatement, at best, to argue that all schools must have equal scoring opportunities, if that means that the ephemeral "level playing field" requires the exclusion of uniquely qualified contestants. The record shows that among the four classes of schools in Maryland, there are relatively small schools that compete, within the same class, against much bigger schools. The

well, that one other Howard County high school has two male wheelers; thus, their team stands to gain up to eight "extra points" if each boy participates in the maximum of four events and defendants are ordered to award team points for wheelchair racers.)

*Success on the Merits*

The balance of harms analysis is extraordinarily close. The court finds, however, that the balancing of harms, to plaintiff on the one side in denying the injunction, and to defendants and to the individual, non-disabled, student-athletes competing in team track and field events at schools other than AHS, in granting the injunction, tips in favor of the plaintiff. Therefore, it would be enough to justify the issuance of a preliminary injunction for the court to find that plaintiff has raised questions so serious, substantial, and doubtful as to make them fair ground for litigation. *Rum Creek Coal Sales, Inc.,* 926 F.2d at 359. For the reasons set forth herein, however, the court concludes that, despite the balance of harms favoring plaintiff, the likelihood of plaintiff's success on the merits of her claims is sufficiently attenuated that the extraordinary remedy of a preliminary injunction is not justified.

■ Plaintiff's claims are brought under the ADA and the Rehabilitation Act.[7] A plaintiff seeking relief for violations of ei-

ther the ADA or the Rehabilitation Act must establish a prima facie case by showing that: "(1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service program or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." *Constantine v. George Mason University,* 411 F.3d 474, 498 (4th Cir. 2005) (citing *Baird v. Rose,* 192 F.3d 462, 467–70 (4th Cir.1999), and *Doe v. University of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1264–65 & n. 9 (4th Cir.1995)). Plainly, McFadden has a disability and she is "qualified" because she has met all of the conditions set forth by defendants for participation in its athletic programs, and she, in fact, participates. As discussed above, she is a full member of the track team. Moreover, for purposes of the Rehabilitation Act, there is no dispute that defendants are recipients of federal funding. It is to the third element of her claims that I now turn.

McFadden has couched her claim at times as one presenting the "denial of a benefit" and/or the denial of "full and meaningful participation" in defendants' educational program insofar as she is not allowed to earn points for her team. Nevertheless, she expressly agreed at the hearing on the motion for preliminary in-

---

teams from these smaller schools are, on average, at a competitive disadvantage because they draw from a smaller pool of athletes.

Thus, a team's success depends on a number of factors that are beyond the ability of education officials acting in good faith to do anything about. A team member with a disability, if that person is otherwise eligible, arguably could be counted as one of those factors, just as a student with extraordinary ability could be the "X factor" for his or her school. Although it is possible that McFadden's points could allow her team to win a championship or otherwise rank ahead of other teams, it would not necessarily be as a

result of any "unfair" advantage, any more than the presence of a uniquely talented basketball center or football quarterback provides an "unfair" advantage to her or his school. Plaintiff also notes, anecdotally, that if Howard County's scoring model were adopted, none of the state team championships of last two years would have been affected by the inclusion of points for McFadden.

7. It is clear that plaintiff's § 1983 claim is simply redundant of her other two claims. She does not assert an equal protection violation.

junction (and in her post-hearing memorandum) that, at bottom, this is a *discrimination* case. As to likelihood of success on the merits, therefore, the dispositive issue is whether McFadden will be able to show at trial that she is being treated *less favorably on account of her disability*. Put differently, the question is whether the constraints on McFadden's ability to earn points for her team differ in any material, legally cognizable way from the constraints on the opportunity of similarly situated students. The court is constrained to answer that question "no."

The essence of unlawful discrimination is disparate treatment of two similarly situated individuals on the basis of a prohibited characteristic, usually a group-based characteristic. Defendants argue strenuously that there is no discrimination here by virtue of their facially neutral 40% Rule. As mentioned above, defendants award team points for track and field events only when schools representing 40% of the students in a particular class participate in an event. Thus, say defendants, given the limited participation in wheelchair racing at the statewide competition, McFadden is treated no differently than is any student at any school who participates in an event with insufficient participation.

McFadden argues that the 40% Rule is at best arbitrary and is not an established standard in the field of high school athletics. McFadden argues that the survey results of the National Federation of High School Athletic Associations demonstrates that there are no standard practices in this area, and she emphasizes that there are already states that allow wheelchair points to be counted. These states clearly do not think they are creating an unfair playing field, but they may only replace one "inequity" with another.[8]

McFadden also asserts that the 40% Rule would operate as a justification to forever exclude her and other wheelchair racers because they will always be minorities and are unlikely ever to reach the required minimum.[9] It is true, of course, that one aim of the disability rights statutes at issue in this case is to protect those with that particular "minority" status because they have been historically stigmatized and excluded. Manifestly, the number of people in a minority group should not determine whether a single member's rights are worthy of vindication. *Cf. Horner v. Kentucky High School Athletic Assoc.*, 43 F.3d 265, 273 (6th Cir.1994)(noting that, while relying on the interest of member schools in a sport "might appear to be gender-neutral, it is a method that has great potential for perpetuating gender-based discrimination")(sex discrimination claims), *op. after remand*, 206 F.3d 685 (6th Cir.), *cert. denied*, 531 U.S. 824, 121 S.Ct. 69, 148 L.Ed.2d 34 (2000).

**8.** The record shows that the two states that award team points to wheelchair racers tweak their standards in ways that simply shift what McFadden describes as unfair treatment. For example, Louisiana recognizes an "outright" team champion and a "co-champion," the later designation given to the team with wheelchair racers. Even plaintiff acknowledges that such practices hardly achieve the "equality" that she seeks in this action.

**9.** The percentage of high school students receiving special education services and who have orthopedic impairments is a little more than .38% (thirty-eight one-hundredths of one percent). As of the 2005 MSDE census, there were 107 high school students with orthopedic impairments enrolled in special education services in Maryland, or an average of .38% of the student population, for grades 9–12. "Maryland Special Education/Early Intervention Services Census Data and Related Tables," October 28, 2005, *available at* http://www. marylandpublicschools.org/NR/rdonlyres/85E7723B–CB82–46B0–AD4BEAD45A69B4F2/9627/sped07.pdf. Students in wheelchairs make up only a fraction of these students.

In this case, however, the minimum percentage requirement embodied in the 40% Rule is neutral in intent and in effect, and, as applied by defendants to withhold team points from McFadden's performances works no unlawful discrimination against her. Plaintiff focuses on the stark and undeniable difference in treatment accorded her as contrasted with the ability of non-wheelers to earn points for their teams, but a proper analysis must bore down more deeply into the intent and effect of the 40% Rule.

First of all, McFadden has erroneously interpreted the 40% Rule as requiring that 40% of Maryland secondary schools must have wheelers before wheelers may earn team points. In fact, as disclosed in the affidavit of defendant Sparks, this is not so. In discussing the application of the 40% Rule, Sparks affirms as follows:

> Generally, new sports and events are added to the Regional and State Tournaments after a minimum of 40% MPSSAA member schools participate in the sport event on the varsity level during the regular season and at district tournaments. This means that *when a sufficient number of local school systems adopt a new sport or event* at the varsity level that comprises the equivalent of 40% or 75 of the 186 member schools, the event can be elevated to the statewide tournament level. *Currently, only Howard County offers wheelchair racing during the regular season, comprising 12 of the 75 minimum schools needed to elevate the event to the State championship competition.*

Defs' Exh. 3, ¶ 22 (emphases added). In other words, even though Howard County is the only jurisdiction offering varsity wheelchair racing, and even though only two schools in Howard County have competitors in wheelchair racing, defendants will count all of Howard County's 12 secondary schools toward the 40% minimum needed to "elevate" wheelchair racing to an event for which team points are awarded. Thus, it is not the case, as McFadden contends, that the 40% Rule will require that fully 40% of all of the state's secondary schools have wheelchair racers before wheelers will be permitted to earn points for their teams. In this light, as applied to wheelchair racing, as few as three more large school systems (e.g., Montgomery County, with 25 schools; Baltimore County, with 24 schools; and Baltimore City, with 19 schools) need offer varsity wheelchair racing, at no more than one or two schools, before wheelers statewide may satisfy the 40% Rule as interpreted by defendant Sparks.

What is equally fundamental, moreover, is the fact that wheelchair racers simply do not compete against non-wheelers, and therefore the dichotomy set up by McFadden—between the incidents of team participation by wheelchair racers, on the one hand, and non-wheelchair racers on the other hand, is not an apt one. In refusing to award team points for wheelers in *Badgett v. Alabama High School Athletic Asso.*, No. 2:07–CV–00572–KOB (N.D.Ala., May 3, 2007), *see supra* n. 3, the court persuasively reasons that there are inherent and relevant differences between the class of wheelers and the class of non-wheelers that education officials are entitled to consider in operating a fair and equitable system of racing competition designed to identify team rankings:

> By asking for her individual points to count toward her team's total in the able-bodied track and field division, Miss Badgett is asking the court to equate wheeling with running and jumping despite the fact that wheeling is a distinct discipline. *See Bd. of Educ. Of Carlstadt–East Rutherford Reg'l High Sch. Dist., Bergen County v. New Jersey State Interscholastic Athletic Ass'n,* 1994 WL 702330, at *16 (N.J. Admin.

June 28, 1994)("The 'essential nature' of racing a wheelchair is different from the 'essential nature' of running. They are distinctly different athletic activities."). *Id.* at *12. *Cf. Shepherd v. United States Olympic Committee,* 464 F.Supp.2d 1072, 1087 (D.Colo.2006)("The USOC's Paralympic program, with its attendant differences in perks and privileges compared to the USOC's Olympic program, exists to provide disabled individuals with participation opportunities fundamentally premised on and defined by the disabilities Plaintiffs argue cannot lawfully form the basis for separate treatment. There is an unavoidable *non sequitur* to the assertion."); *and see id.* at 1094 ("[T]he benefits Plaintiffs seek are not of access to the Olympic experience or participation in elite athletics, but of the quality of their experience as Paralympians compared to the experience of non-disabled Olympians. [The caselaw cited by plaintiffs] does not get them there.").

Although McFadden does not contend that she is legally entitled to race against non-wheelers, the effect of her theory of discrimination is the same as if she were so contending. In other words, in seeking treatment identical to non-wheelers in respect to the ability to earn team points (although, within the context of Maryland interscholastic athletics, she is a "class of one") she is both accepting that wheelers are different, e.g., they compete only against other wheelers, while at the same time, she would disavow the reality of the very difference that enables wheelers to compete (against only each other) in the first place. This will not wash. *See id.* at 1093 ("Where factors such as disability or sex render individuals unable to participate without a separate program or participation opportunity, the question becomes one of the effectiveness or equality of the separate benefit and not that the creation of the separate participation opportunity itself is tantamount to unlawful discrimination.").

In sum, it is not likely that, upon a full review of the merits of McFadden's claims, the court will be persuaded that it is *discriminatory* under the disability rights statutes for defendant to maintain a difference in the opportunity of wheelchair racers, in contrast to non-wheelchair racers, to earn points for teams, where all but a small number of teams are significantly under-represented in the distinct class of competitors of which McFadden is the sole member: wheelers. Accordingly, plaintiff's minimal likelihood of success on the merits of her claims weighs heavily against her.

*The Public Interest*

The final factor, the public interest, is evenly balanced in this case. While it is clearly in the public interest to provide for "full and meaningful" participation of persons with disabilities in secondary school athletic programs, it is equally true that the public interest is furthered when responsible educational officials, faced with a clash of interests among students, are afforded the time and opportunity to conduct a deliberate and comprehensive evaluation of how best to reconcile those conflicting interests. Manifestly, this is true so long as they are acting in a way that is consonant with their obligations not to exclude, stigmatize, or diminish the contributions of disabled students and are, to the contrary, undertaking to broaden opportunities for fuller and more meaningful participation by disabled students. That test is satisfied here.

### III.

McFadden is a remarkable young person for and in whom the entire community should feel boundless pride and admiration. Her diligence, determination, hard work, and yes, even her advocacy, are

noble and inspiring. Nevertheless, her quest for the extraordinary remedy of a preliminary injunction does not satisfy the long-standing criteria applicable to such efforts. Accordingly, for the reasons set forth herein, the motion for preliminary injunction is DENIED.